## UNITED STATES v. LEVINE.
### No. 252.

Circuit Court of Appeals, Second Circuit.
April 6, 1936.

Harry A. Lieb, of New York City (Morris L. Ernst, Newman Levy, Alexander Lindey, and Eugene M. Kline, all of New York City, of counsel), for appellant.

Lamar Hardy, U. S. Atty., of New York City (Joseph P. Martin, Asst. U. S. Atty., and Thomas B. Flynn, Sp. Asst. U. S. Atty., both of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

### L. HAND, Circuit Judge.

The defendant was indicted in one count for posting an obscene circular, and in eight subsequent counts for posting obscene circulars advertising obscene books. The jury brought in a verdict of guilty only on the eighth count and the others were dismissed; the circular laid in that count was alleged . to have advertised five books, of which only three are before us; they are entitled, "Secret Museum of Anthropology," "Crossways of Sex" and "Black Lust." The first is a reproduction of a collection of photographs, for the most part of nude female savages of different parts of the world; the legitimacy of its pretensions as serious anthropology is, to say the most, extremely tenuous, and, while in the hands of adults it could not 'be considered obscene, it might be undesirable in those of children or youths. The second book professes to be a scientific treatise on sexual pathology; again its good-faith is more than questionable; for example, the author, a supposititious· scientist, remains anonymous. It could have no value to psychiatrists or others genuinely interested in the subject, and in the hands of children it might be injurious. The third is a work of fiction of considerable merit, but patently erotic, describing the adventures of an English girl captured by the Dervishes at the fall of Khartoum and kept in a harem until the Battle of Omdurman, when she is killed. It purports to be a study in sadism and masochism, and would arouse libidinous feelings in almost any reader. There was nothing to distinguish the addressee in the eighth count or to indicate why the jury should have selected him alone. He was only allowed to identify the circular, an objection being sustained to his testimony that he had delivered it over to his father when he· got it, as he had been directed. As the record stands he may have been of any age. In the case of several other counts it did appear that the addressees were minors, but the judge declared that the buyer's age was immaterial and took the issue from the jury.

The defendant took a number of exceptions during the trial with most of which we need not concern ourselves, because they will not reappear upon the next trial, which must be had because we cannot accept the charge. The judge first said that the statute (Cr.Code, § 211; 18 U.S. C.A. § 334) was directed against stimulating sensuality, and that this was not to be measured by its effect, either upon "the highly educated" or upon the "highly prudish," but "on the usual, average human mind." This was well enough, so far as it went, but later he in substance took it back. There was a class, he said, "found in every community, the young and immature, the ignorant and those who are sensually inclined"; the statute was meant to protect these and the jury should regard the effect of the books on their minds, rather than on those of "people of a high order of intelligence and those who have reached mature years." If the books contained a "single passage" such as would "excite lustful or sensual desires" in the minds of those "into whose

hands they might come," the statute condemned them. This the defendant challenged and the judge said he would modify it, but he did not; the attempted modification was in substance a repetition of what he had said before. The standard so put before the jury was indeed within the doctrine laid down in Regina v. Hicklin, L.R. 3 Q.B. 360, and United States v. Bennett, Fed.Cas.No.14,571, 16 Blatchf. 338, though the Supreme Court has never approved it. Rosen v. U. S., 161 U.S. 29, 42, 16 S.Ct. 434, 480, 40 L.Ed. 606, has at times been supposed to do so, and the charge then before the court did indeed follow Regina v. Hicklin, so that the accused might have raised the point now at bar. But he did not; his only complaint, which the court overruled, was that the judge should not have left it to the jury at all to say whether the publication was obscene, but should have decided the question himself. It is true that United States v. Bennett, supra, has been followed at nisi prius, but without considering the point specifically, merely repeating the phrase that the decisive question was the effect upon any persons into whose hands the book might fall. United States v. Bebout (D.C.) 28 F. 522; United States v. Clarke (D.C.) 38 F. 732; United States v. Smith (D.C.) 45 F. 476. United States v. Wightman (D.C.) 29 F. 636, approved this obiter. At times even in these decisions, e. g., United States v. Clarke and United States v. Smith, there were intimations that the standard might depend upon those to whom the publication was addressed, and in Burton v. U. S., 142 F. 57, 63, the Circuit Court of Appeals for the Eighth Circuit plainly had a relative standard in mind: "It was not a communication from a doctor to his patient, nor a work designed for the use of medical practitioners only." Moreover, the doctrine did not escape criticism [United States v. Kennerley (D.C.) 209 F. 119], before we, following the New York Court of Appeals in Halsey v. New York Society, 234 N.Y. 1, 12, 136 N.E. 219, overruled it in two recent decisions, United States v. Dennett, 39 F.(2d) 564, 76 A.L.R. 1092, U. S. v. One Book Entitled Ulysses, 72 F.(2d) 705.

This earlier doctrine necessarily presupposed that the evil against which the statute is directed so much outweighs all interests of art, letters or science, that they must yield to the mere possibility that some prurient person may get a sensual gratification from reading or seeing what to most people is innocent and may be delightful or enlightening. No civilized community not fanatically puritanical would tolerate such an imposition, and we do not believe that the courts that have declared it, would ever have applied it consistently. As so often happens, the problem is to find a passable compromise between opposing interests, whose relative importance, like that of all social or personal values, is incommensurable. We impose such a duty upon a jury (Rosen v. U. S., supra, 161 U.S. 29, 42, 16 S.Ct. 434, 480, 40 L.Ed. 606), because the standard they fix is likely to be an acceptable mesne, and because in such matters a mesne most nearly satisfies the moral demands of the community. There can never be constitutive principles for such judgments, or indeed more than cautions to avoid the personal aberrations of the jurors. We mentioned some of these in United States v. One Book Entitled Ulysses, supra, 72 F.(2d) 705; the work must be taken as a whole, its merits weighed against its defects (Konda v. U. S. [C.C.A.7] 166 F. 91, 22 L.R.A.[N.S.] 304); if it is old, its accepted place in the arts must be regarded; if new, the opinions of competent critics in published reviews or the like may be considered; what counts is its effect, not upon any particular class, but upon all those whom it is likely to reach. Thus "obscenity" is a function of many variables, and the verdict of the jury is not the conclusion of a syllogism of which they are to find only the minor premiss, but really a small bit of legislation ad hoc, like the standard of care.

The case was not tried on this theory; on the contrary the judge supposed that a book or picture was obscene or innocent by an absolute standard independent of its readers; moreover he thought that a single passage might condemn it, regardless of its merits as a whole. He was in error as to both points, and the only question is whether the mistakes were serious enough to upset the conviction. Judge Manton and I think that they were; Judge Augustus N. Hand believes that "Crossways of Sex" was so plainly obscene that the errors may be disregarded. Our reversal does not mean that on another trial the proper stand-

158

ard can under no circumstances refer to adolescents. It may appear that the prospective buyer in the eighth count was a youth and that the accused had reason to suppose that he was. The evil against which the statute is directed, would then be the possible injury to such a youthful reader. It is when the crime consists of importing the work, or offering it for general sale, that the test cannot be found in the interests of those to whom it is sent, though abnormally susceptible, lest in their protection the interests may be sacrificed of others who might profit from the work; and that some compromise must be made. But even when the crime consists of a single sale, and so may be judged by possible injury to the buyer, the book must be taken as a whole. In this case the jury may find "Crossways of Sex" and "Black Lust" obscene when sent to any reader; "Secret Museum of Anthropology" can be so regarded only if sent to youths. The standard must be the likelihood that the work will so much arouse the salacity of the reader to whom it is sent as to outweigh any literary, scientific or other merits it may have in that reader's hands; of this the jury is the arbiter.

The judge refused to allow in evidence a list of purchasers of the books, among whom were a number of well-known persons. He was right. Such a list taken alone told nothing of the standing of the works in the minds of the community; even respectable persons may have a taste for salacity. Obviously it would be impossible without hopelessly confusing the issues to undertake any analysis of such a list by finding out why each buyer bought. On the other hand it is reasonable to allow in evidence published reviews of qualified critics—quite another thing incidentally from expert witnesses at the trial—for such evidence does not lead far afield and is rationally helpful, though in the end it is the jury who must, declare what the standard shall be. So far as that may be a menace to the free development of the arts, it is a risk which Congress has seen fit to impose, and which we cannot gainsay, even if we would.

Judgment reversed; new trial ordered.

MANTON, Circuit Judge, concurs in the result.