**SUNSHINE BOOK COMPANY,**
Plaintiff,

v.

**Arthur E. SUMMERFIELD, Individually and as Postmaster General of the United States, Defendant.**
**Civ. A. No. 74–55.**

United States District Court,
District of Columbia.

Jan. 31, 1955.

KIRKLAND, Judge.

There is before the Court the case of Sunshine Book Co. v. Summerfield individually and as Postmaster General of the United States, defendant, in Civil Action No. 74–55.

The complaint was originally filed January 6, 1955, and there has been an amended complaint filed on January 18, 1955. They differ in only one slight particular. The gravamen of the complaint of January 6, 1955, was directed to injunctive relief sought by the plaintiff against the impounding of some 400 copies of the magazine Sunshine & Health for February, 1955, at the Mays Landing, New Jersey, Post Office, and, as well, a separate claim for declaratory judgment that this particular magazine was not obscene.

The amended complaint also has attached as an exhibit Sun Magazine of the issue of January-February, 1955, and seeks in a third claim a declaratory judgment that the character of that magazine is not obscene in fact.

Historically, the facts of this case indicate that on approximately December 23, 1954, the Postmaster of Mays Landing, New Jersey, Post Office, gave notice to the depositor, namely, the plaintiff here and subsidiary groups including Solar Union Naturisme, Inc., that the deposit of these magazines on instruction of the Postmaster General was being withheld from the United States mails.

At the same time notice was given of an administrative hearing before the Solicitor for the Post Office Department. The hearing began on January 16, 1955, and after several postponements has proceeded to a conclusion and there has been filed in the action of this case today the administrative finding of the Postmaster through his subordinates the trial examiner and the Solicitor for the Post Office Department, and that finding has been that the "review of the entire official record * * * upon substantial evidence * * * indicates that the magazines in question contain photographs of naked men, women and chil-

O. John Rogge and Josiah Lyman, Washington, D. C., for plaintiff.

Edward H. Hickey, Donald B. Mac-Guineas, Washington, D. C., Joseph Langbart, Arlington, Va., for defendant.

dren, principally women, clearly revealing genitals, breasts and other portions of the body normally covered in public." It concludes that, "From the advertisements therein contained, that they are offered freely for sale," and the Post Office Department through its officials in this hearing has made a finding of fact that "The photographs appear obscene and indecent when judged by the ordinary community standards of the vast majority of citizens of this country."

Continuing with the historical portion of the case, there was filed at the outset with the complaint of January 6 a motion for a temporary restraining order. That was heard briefly and denied, and a date was set for the hearing of the temporary injunction, which upon hearing was likewise denied, and so it was brought up until this date, January 31, 1955, for the determination of the then pending status of the case on the final injunction.

At the time this particular Court heard the argument of the motion for a temporary injunction one of the issues raised was, and properly raised, that the administrative remedies had not been exhausted. The Court heard argument on both sides of the question and concluded that from the Congressional enactments and the customs and procedures followed that the initial determination under Title 18 U.S.C. § 1461, the obscenity statute, lay with the Postmaster General, and accordingly the Court gave directions that that should first be settled and disposed of, as the record now reveals it has been, and then the matter on the nature of the finding, as well as the question raised by the pleadings, would be decided today.

Accordingly, on the record of the case, including the pleadings, the affidavits appended, affidavits appended to Civil Action 3007–53, the Court on opening statements has narrowed the issues of this particular case.

The Court has ruled that there is provision under this statute, Title 18 U.S.C. § 1461, for the Postmaster General to conduct hearings and examinations into the alleged obscenity of publications, pamphlets, pictures, papers, letters, prints or other publications; that Title 18 U.S.C. § 1461 is not unconstitutional; that due process under the Fifth Amendment was provided for by a hearing in which either testimony, or review of the magazines and the pictures contained therein by visual observation, and the helpful argument of counsel did constitute a proper hearing within that provision. The Court has also ruled that under Title 18 U.S.C. § 1461, there is not a denial of the provisions of the First Amendment to the Constitution.

The Court also ruled preliminarily that the administrative hearing was one contemplated by the Congress and one carried out properly by its designated agent, the Postmaster General; that the scope was not essentially criminal in character, though criminal provisions are applied because the statute carefully declared that whatever was obscene, lewd, lascivious, filthy or of an indecent nature as it applied to any book, pamphlet, picture, paper, letter, print or other publication should be declared not to be mailable and should not be conveyed in the mails or delivered from any post office or by any letter carrier; that the Court was not confined to a mere determination of whether the finding of the Postmaster General from his hearing was arbitrary and capricious but that the Court in the status of this case which antedated the actual finding in the proceedings themselves, as well as the review of the proceedings, had the right to pass upon whether there was a foundation for the Postmaster in his finding that these two publications were obscene.

That left open the sole question of whether the two publications were obscene as a matter of fact and as a matter of law.

Counsel have very ably presented the matter. They have been very careful to indicate their industry, and their deep professional learning.

Accordingly, we are in the posture of determining the standards by which to judge these particular magazines.

■ First of all, nudity is not, per se, obscene, as the case of Parmelee v. United States, from our own circuit, reported in 72 App.D.C. 203, 113 F.2d 729, was clear to point out. However, we must steer a course, in the clash of these legal interests, between what is art on the one hand, pornography on the other; what is decent on the one hand as against what is indecent on the other; and what is conformity to the mores of the District of Columbia, the State of New Jersey and America in general. Accordingly, we must first consider the definitions which have been handed down in interpreting the mandate of Congress.

Title 18 U.S.Code, § 1461 lays down five descriptive adjectives of what will constitute the basis of obscenity in general. Congress has used the words, "obscene," "lewd," "lascivious," "filthy" and "indecent" and has applied them to books, pamphlets, pictures, papers, letters, prints and other publications.

This, of course, is a magazine. It is a publication. There are contained within it pictures. Accordingly, in that aspect of the statute, this Court has jurisdiction.

It is declared if they are found to be obscene they are to be non-mailable, they are not to be transported or conveyed in the mails, and they are not to be delivered from any post office or by any letter carrier.

Those parts are clear and do not need definition. But there is a need of definition as to what the Congress meant in the employment of the five adjectives.

In connection with the definition of "obscene" the Supreme Court in Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799, has declared that obscenity or the adjective "obscene" must be calculated to lower that standard which we regard as essential to civilization or calculated with the ordinary person to deprave his morals or lead to impure purposes.

In the case of United States v. One Obscene Book Entitled "Married Love", 48 F.2d 821, from the Southern District of New York, decided in 1931, the Court there declared that obscenity means to be offensive to the senses or to the taste, refinement; disgusting, repulsive, filthy, foul, abominable, loathsome, offensive to modesty or decency, expressing or suggesting unchaste or lustful ideas; impure, indecent, lewd.

In our own local case, Parmelee v. U. S., 72 App.D.C. 203, 113 F.2d 729, 730, decided in 1940, the Court said, and I quote: "Obscenity is not a technical term of the law and is not susceptible of exact definition. * * * Probably the fundamental reason why the word obscene is not susceptible of exact definition is that such intangible moral concepts as it purports to connote, vary in meaning from one period to another."

In the case of United States v. Two Obscene Books, 99 F.Supp. 760, from the District Court of California, decided in 1951, the Court indicated that the definition of "obscene" is: Offensive to chastity and modesty; that form of indecency which is calculated to promote the general corruption of morals; has a tendency to deprave or corrupts the morals of those whose minds are open to such influences and into whose hands it may fall by allowing or implanting in such minds obscene, lewd, or lascivious thoughts or desires.

Passing on to the second word which appears in the statute, namely, the word "lewd", it has been defined in United States v. Slenker, D.C., 32 F. 691, as having a tendency to excite lustful thoughts.

In the case of United States v. Males, decided in D.C., 51 F. 41, the word "lewd" has been defined as licentious.

The third word is the word "lascivious." In the case of United States v. Clarke, D.C., 38 F. 732, that word was defined as synonymous with "lewd"; dissolute, unchaste, calculated to excite lustful and sensual desires in those whose minds are open to such influences.

In the case of Swearingen v. United States, 161 U.S. 446, 16 S.Ct. 562, 40 L.Ed. 765, it was defined as: Tending to excite lust; lewd, indecent; obscene;

relating to sexual impurity; tending to deprave the morals in respect to sexual relations.

The fourth word is the word "filthy." That has been defined in United States v. Davidson, D.C., 244 F. 523, as: Morally foul, polluted, nasty.

In the case of Tyomies Publishing Co. v. United States, 6 Cir., 211 F. 385, it was defined as: Dirty, vulgar, indecent, offensive to the moral sense, morally depraving, debasing.

In the case of United States v. Limehouse, 285 U.S. 424, 52 S.Ct. 412, 76 L.Ed. 843, it was defined to mean matter that, though not lewd or obscene, it nevertheless had a tendency to corrupt or debauch.

The definition of the last of these five adjectives, the word "indecent," has been stated in United States v. Davidson, D.C., 244 F. 523, to be: Offensive to common propriety; offending against modesty or delicacy; grossly vulgar, obscene, lewd.

And in the case of United States v. Smith, C.C., 11 F. 663, the word "indecent" is defined as: Immodest, impure.

Those definitions are the beacons by which the legal channel is lighted for the Court to arrive at findings of fact and conclusions of law in this case.

█ Next, it is clear that under the law, as the trier of the facts, the Court is to apply the test of the normal, reasonable person, and the findings are to be predicated upon his—that is, the normal, reasonable, prudent person's—determination.

In the case of Walker v. Popenoe, reported at 80 U.S.App.D.C. 129, 149 F.2d 511, particularly with regard to the law on obscenity and the tests applying thereto, our Circuit Court of Appeals, 149 F.2d at page 512, stated that there should be three classifications, and laid them down by way of tests, as follows:

First, "The effect of a publication on the ordinary reader is what counts. The statute does not intend that we shall 'reduce our treatment of sex to the standard of a child's library in the supposed interest of a salacious few.' "

Second, "The statute does not bar from the mails an obscene phrase or an obscene sentence. It bars an obscene 'book, pamphlet * * * or other publication * * *.' If a publication as a whole is not stimulating to the senses of the ordinary reader, it is not within the statute."

Third, "It would make nonsense of the statute to hold that it covers works of value and repute merely because their incidental effects may include some slight stimulation of the senses of the ordinary reader. The dominant effect of an entire publication determines its character."

As was pointed out in the case of Parmelee v. United States, 72 App.D.C. 203, 113 F.2d 729, the modern rule was restated with emphasis, and 113 F.2d at page 731 the Court said, and this trial court quotes:

"But more recently this standard has been repudiated, and for it has been substituted the test that a book must be considered as a whole, in its effect, not upon any particular class, but upon all those whom it is likely to reach."

It has been urged upon the Court that the finding of my brother Judge Henry Schweinhaut, in the case of Summerfield v. Sunshine Book Co., No. 12,-026, D.C.Cir., 221 F.2d 42, is controlling both as to the law and the facts in this particular case, both on the doctrine of stare decisis and res judicata.

█ The Court rules that on the doctrine of stare decisis it is not controlling for the reason that the standards of that case by which another court could judge the findings are not set forth, and is actually complained of in the majority view of the Circuit Court of Appeals when the majority states, "In this view of the case, it does not become necessary to pass upon other questions raised by the appellees as to the constitutionality or applicability of this statute, as to the propriety of the

Postmaster General's finding that the publications involved in his orders were obscene, see Parmelee v. United States, 1940, 72 App.D.C. 203, 113 F.2d 729," —and the Court with emphasis adds— "or the adequacy of the evidence and record upon which such a finding was based in the instant case."

There the Postmaster General made a very short finding unlike the finding he has made in the instant case. He merely found that some 25 copies of magazines of the same publication issued in the years 1952 and 1953 were obscene. My brother Judge Henry Schweinhaut merely stated that with that he did not agree, and he found and signed an order on a sole finding of fact that the magazines were not obscene.

It was in that posture that the case went to our Circuit Court of Appeals, and the majority very properly ruled that under Title 39, U.S.C.A. § 259(a), where a postmaster at a local station had indiscriminately withheld money orders and general mail which could touch both a lawful or unlawful purpose or legal or illegal purpose, he had exceeded his bounds, and this Court interprets the majority view as not binding upon whether subsequent issues of the same magazine might be obscene in fact.

The dissenting view of appellate case is strong that all of those magazines were obscene both in law and in fact.

There is also the case of Sunshine Book Co. v. McCaffrey, cited at Sup., 112 N.Y.S.2d 476, where in passing upon the seizure of the same magazine from the newsstands in New York City in the year 1952, and where it was sought by injunctive powers to lift the ban which the Commissioner of Licenses of New York City had applied, that court held that the same type of magazines—Sunshine & Health and Sun magazine— were obscene, and particularly pointed to the fact that on the front page there was a picture of a nude woman which clearly showed the pubic area. That par-

ticular court repudiated the Parmelee case from our own Circuit.

This Court points to the decision in the case of Summerfield v. Sunshine Book Co., No. 12,026 as not controlling on this doctrine of stare decisis.

On the question of res judicata, for the reason that there was no clear showing what the basis was for the finding by the Postmaster that the magazines were obscene nor the finding by the trial court that they were not obscene, the Court in this particular instance is not bound by the decision in the former case on the doctrine of res judicata. The matter is clearly before the Court for a determination.

The Court has set forth the legal beacon lights that will guide its course in the determination of whether a book, pamphlet, picture, paper, letter, print, or other publication is to be judged, and will make the following findings of fact and conclusions of law as respects the magazine Sunshine & Health, February, 1955, Vol. 23, issue No. 2, and the Sun Magazine, January-February 1955, being volume 5 and issue No. 1.

First and foremost, nudity is not obscene, per se. There are a series of silhouettes which appear in this publication of Sunshine & Health. They depict the human female form in a broad outline. The Court will hold as a fact that they are not obscene.

There are some sketches in the issue of Sun Magazine which are broad pen sketches, and while they reveal the general outline of the female form, the Court will also hold that those sketches, because of their indefiniteness, of failure to emphasize any particular part of the male or female genital area, are not obscene as a matter of fact.

The articles which appear do not contain vulgar or obscene matter, and the Court will hold that they are not obscene as a matter of fact.

The Court will also hold that the American people are a clothed race, that under our Constitution the views of

others are always permitted, and that progress comes out of some of those views, and aids, generally, all the citizens.

The Court will hold that nudism in its present stage is a cult or a society or a group that represents a very small minority of the American people.

■ The Court will also hold that, from acceptance of the majority in works of art, in medical and scientific journals, books, magazines and literature, religious articles and the like, pictures which show the human form merely in the nude and beyond that not revealing the pubic area or the male or female genitalia, are not obscene.

The Court will also hold as a fact that posterior views of nudes, be they male or female, young or old, whether photographed or sketched at short or long distances, are not obscene as a matter of fact. Views taken from the side of nude persons, male or female, young or old, that do not reveal the genitalia or the pubic area, are not obscene. Where the one photographed or sketched, or whose likeness is reproduced on parchment or paper, or canvas, makes concealment of the pubic area by his or her limbs or by objects, or where the area is concealed by shadow, such pictures are not obscene as a matter of fact. Pictures taken at sufficient distance, although being a front view, are not obscene. It depends upon the distance of the camera's focus or the projection of the artist or the one who is sketching the scene—the distance as projected from the viewer's eye.

Where the artist or the photographer obscures by shadowing, by retouching photographic plates, or by concealment or obliteration of the pubic area, though it reveals all other formations of the nude body, male or female, young or old, that is not obscene as a matter of fact.

■ Where children are photographed in a frontal view which reveals the diminutive and undeveloped genitalia, that is not obscene as a matter of fact.

It is difficult to lay down a hard and fast rule but certainly, drawing upon the criminal rule as an analogy, children below the age of seven photographed in such condition do not exhibit a picture which is obscene, lewd, lascivious, filthy, or of an indecent nature, by virtue of their age of innocence, the under-development of their genitalia, and the common acceptance of the American people of such views.

Between the ages of seven and fourteen, when the children undergo rapid development, and especially in the warmer portion of our country, there, of course, because of the development which occurs in the pubic area, which is a small portion of the human anatomy characterized by pubic hair in both sexes, and where genitalia are also intimately revealed, it may or may not, depending upon the distance, the obliteration, the shadowing and the like, be obscene as a matter of fact.

■ Where photographs are taken of the pubic area at very close range they are as a matter of fact obscene, and, it will follow, as a consequence, as a matter of law, obscene.

As to the female breast there is always the problem of the acceptance of its exposure by the majority of the American people. The organ, of course, is one of nutrition for young, expanding during periods of pregnancy and reducing in size when the state of non-pregnancy and the nurture of the young child has no longer required its function.

The public is, therefore, accustomed to the view of the nursing mother and has not found it to be indecent or obscene. Since the ancient past there have been many periods of years when, as to the form of dress worn by the female, the plunging neckline has been accepted in the mores of the people, so that the revealing of the breast would not in itself be obscene. However, its accentuation, its distortion, or its grossness could, under the broad definition, depending upon the situation, make it filthy or might make it indecent.

Of course, the Court is not touching upon the question which would appear to be the fact, that sometimes partial concealment adds to allure, because the pictures involved in these cases, where they run against the standards the Court has indicated, are not pictures where there is concealment.

Accordingly, against those broad findings of fact the Court will make these particular findings of fact.

On the outside cover of Sunshine & Health Magazine for February, 1955, there is a close view of a young woman apparently in her early twenties. There is no show of the pubic area and there is no show of the genitalia by the angle at which the picture is shot. While the shadowing on her chest is grotesque and indicates a bosom larger by far than normal, it is shot at such an angle as to elongate and make quite massive the breast as distinguished from the very small nipple. While it gives an effect, in general, of grotesqueness by the tests which the courts have laid down, it is not obscene under the test of this statute.

There is a picture of a young girl on page 7. She appears to be approximately six or seven. It is a frontal view taken within a very short range of approximately 6 feet. She is swinging on a swing, facing the camera. While the labia majora are shown, they are diminutive and juvenile. One would have to be prudish to hold that that was an obscene picture. The Court does not hold it as a fact and rules that it is a picture that does not contravene this statute.

On page 9 there is a picture of a man on water skis, taken at some distance. His genitalia are clearly revealed, appearing in the center of the picture. The Court is going to hold that by the closeness, the detail that can be seen, that that is an obscene picture within the purview of the statute.

There is a picture shown at the upper portion of page 13. This is a picture of two persons, a woman seated beside a pool and a man standing to her side. The woman, by the crossing of one leg partly over the other, has obscured the pubic area and genitalia, and hers is not an obscene picture. The man, on the other hand, is standing with a side view. By artful use of shadow his face is completely obliterated, his entire pubic area is obliterated by the shadow, but prominently shown in front of the pubic area and against this dark background is his male organ; the corona of the penis is clearly discernible; in fact, even a casual observation of it indicates that the man is circumcized. This obviously has no place even in illustrating the principles of nudism. It is filthy, it is foul, it is obscene, and the Court will hold such as a matter of fact.

On page 15 there are four middle-aged women with their backs to a very large oak tree, appearing to be some 12 feet in diameter. They are holding hands and facing the camera. Only two of these women are revealed to the viewer. The woman to the left is a woman of middle age. She has very large thighs. The pubic hair is clearly shown. Her right thigh is particularly noticeable because, though there are trees nearby, the formation which appears on the thigh is not that of shadow, it appears to be matted varicose veins that cause her to be grotesque, vile, hold her up as an object of scorn, and the Court will hold under the statute that that is filthy, and that it is indecent. That is also true of the woman in the foreground who, while not in as much sunlight as the other, nevertheless clearly reveals her pubic area as she stands within approximately 6 feet of the camera.

On page 16, in a mixed group, there is one man revealed at the corner where his genitals are clearly shown, and the Court will rule as a matter of fact that that is obscene.

On page 29 there is a most unusual picture. Here are two women who appear to be in their late twenties or early thirties. The woman to the left appears to be approximately 5 foot 7. She

must weigh in the neighborhood of 250 pounds. She is exceedingly obese.

I assume the illustration, not retouched by the photographer, is to represent the normal, natural person and reveals her as she was in fact when the picture was taken. This picture was taken within approximately 12 feet of the camera. First of all, so far as the demonstration of nudism goes, the picture shows a very clear sunburned "V" at her neck—V-shaped sunburn—whereas the rest of her skin is white as the snow on which she stands. The Court might gather she is a new member or a non-conformist. She has large, elephantine breasts that hang from her shoulder to her waist. They are exceedingly large. The thighs are very obese. She is standing in snow, wearing galoshes. But the part which is offensive, obscene, filthy and indecent is the pubic area shown.

Being most liberal, one might say that the area shown of the pubic hair is caused by shadow, but the same is not to be noticed on both sides. The hair extends outwardly virtually to the hip-bone. It looks to the Court like a re-touched picture because the hair line instead of being straight is actually scalloped or in a half-moon shape, which makes the woman grotesque, vile, filthy, the representation is dirty, and the Court will hold that that picture is obscene in the sense that it is indecent, it is filthy, and it is obscene as a matter of fact; because of the closeness of the view the woman to her left and the viewer's right is likewise held to be obscene.

The intent of the photographer and publisher is clearly shown by those prior pictures, because on page 17, standing within 8 feet of the photographer, is a male figure. Although the outline of his body is shown, the pubic area and genitalia are completely blocked out, revealing a picture under one condition there, and showing pictures under different conditions, as pointed out by the Court, and the Court points to that fact and

holds that the latter pictures were thus reproduced intentionally.

With regard to Sun Magazine against the standards set forth, the Court will hold that the picture of the young girl photographed on page 6, standing within approximately 6 feet of the camera, showing the pubic area, is obscene; that it is lewd, lascivious, and tends to incite lust and sensual ideas; that the two pictures shown on pages 8 and 9 of a young girl in her early twenties standing within short range of the camera, approximately some 8 to 10 feet, in a frontal view showing the clear detail of the pubic area, are obscene.

On page 11 there is a picture of three females with the caption, "Mrs. Nudism of 1954 and Two of Her Ten Children." The two girls who appear with her are in their early 'teens. The mother is obese, short, stocky, has large flat breasts; the pubic area is somewhat shaded by shadow; the pubic hair is matted; the over-all picture is one of vulgarity, filth, obscenity and dirt. But the photographer in taking this picture has caused the two girls to turn to a side view and the sunshine clearly shows the fine, soft texture of pubic hair of the adolescent girls, and accordingly the Court finds the picture is obscene, lewd, and lascivious.

There is shown on page 13 a picture of a woman in her early twenties. She is standing in a three-quarter pose within 6 feet of the camera. There is a woman to the side holding a large inflated ball of some sort. The sun and the said ball have cast a shadow upon the body of the other woman. While it is suggestive, it, nevertheless, by the distance, the posture and the elimination through the shadow of the pubic area, is not obscene.

There is a sketch on page 19 of Sun Magazine which does not show in any great detail the pubic area of the two females shown tossing a large ball, and the Court finds that the drawing is not obscene.

There are pictures taken within an approximate range of 15 feet of the camera, in the surf, showing two nude couples. The women are obscured by the waves. The man in the foreground has completely revealed his male genitalia, and the Court will hold that that is obscene.

There is a suggestive picture on page 23—what appears to be a Mexican, a woman of Mexican birth, a very dark complexioned woman. But the shadows in the scene obliterate the pubic area, and the Court will hold that that is not obscene as a matter of fact or law.

There is a picture taken of a group at some great distance watching an exhibition of judo or wrestling, on page 29, but by virtue of the distance at which that picture is taken the Court will hold that it is not an obscene, lewd or lascivious picture.

 Accordingly, the Court concludes as a matter of fact that the pictures fall within the standards as the Court has indicated in its findings, and concludes as a matter of law that the right of the Postmaster to have made his initial findings as he did is established by the cases. The statute does not thwart the principles of the First Amendment or the Fifth Amendment; that there was foundation in fact for his findings, and review of the entire official record and of the initial decision by the Post Office Examiner, and discloses no erroneous findings of fact nor conclusions of law; the initial decision was founded upon substantial evidence and contains correct rulings, findings of fact and conclusions of law upon all material issues. These magazines contain photographs of naked men, women and children—principally women—clearly revealing genitals, breasts and other portions of the body normally covered in public. It is apparent from advertisements therein contained that they are offered freely for sale to the general public who are not members of the nudist organization. The photographs appear to be obscene and indecent when judged by the ordinary community standards of the vast majority of the citizens of our country.

The postmaster at Mays Landing, New Jersey, will, accordingly, be instructed to treat the February 1955 issue of Sunshine & Health and the January-February issue of Sun (Solaire Universelle Nudisme) as non-mailable.

The Court finds from the record, from the standards, that there was basis in fact and in law for the conclusion of the Postmaster General, and accordingly will sustain him in that view. The Court will conclude as a matter of law that since the dominant theme of both magazines, by the findings of fact, is clearly one of obscenity, the Court will direct first that the motion for a permanent injunction as against the action of the Postmaster General in withholding 400 copies of Sunshine & Health, February, 1955, will be dismissed with prejudice, and disposition of those copies, depending upon an ultimate determination, will proceed in accordance with postal regulations. On the amended complaint in the third claim seeking a declaratory judgment on Sun Magazine, January-February 1955 issue, the Court will enter judgment for the defendant in the cause and will find as a fact that the magazine is obscene within Title 18 U.S. Code § 1461.

Counsel will prepare suitable findings of fact and conclusions of law.