**Irving KLAW, Plaintiff,**

v.

**Robert H. SCHAFFER, individually, and as Postmaster of the United States Post Office at New York, New York, Defendant.**

United States District Court
S. D. New York.

May 7, 1957.

Brower, Brill & Gangel, New York City, for plaintiff.

Paul W. Williams, New York City, Benjamin T. Richards, New York City, of counsel for defendant.

EDELSTEIN, District Judge.

The parties have cross-moved for summary judgment in an action to enjoin the defendant Postmaster from carrying out the order of the Postmaster General issued under the provisions of 39 U.S.C. § 259a, 39 U.S.C.A. § 259a, directing that mail addressed to the plaintiff be marked "unlawful" and returned to the senders. The complaint also seeks a declaratory judgment that 39 U.S.C. § 259a, 39 U.S.C.A. § 259a is unconstitutional as repugnant to the First, Fifth and Eighth Amendments, and a judicial review under the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., 5 U.S.C.A. § 1001 et seq., of the decision and determination of the Hearing Examiner and the approval of that decision by the Solicitor for the Post Office Department and the Postmaster General.

After the issuance of an administrative complaint, and upon appropriate notice, an administrative hearing was held on the charge that the plaintiff was conducting an unlawful enterprise through the mails in violation of 39 U.S.C. § 259a, 39 U.S.C.A. § 259a. The Hearing Examiner filed findings that the plaintiff was obtaining and soliciting remittances of money through the mails for obscene, lewd, lascivious and indecent photographs, drawings, cartoons and motion pictures, and was giving information by mail about where, how or from whom such material might be obtained. The plaintiff in this action thereafter appealed to the Solicitor for the Post Office Department who affirmed the initial decision of the Hearing Examiner, and an order was issued by the Postmaster General to the Postmaster in New York, New York, directing that all mail addressed to the plaintiff be marked "Unlawful: Mail to this address returned by order of the Postmaster General", and forbidding the payment of any money order in favor of the plaintiff.

After the filing of the complaint in this action, Judge Dimock signed a temporary restraining order requiring the Postmaster to impound the mail addressed to the plaintiff, and an order to show cause why a preliminary injunction should not be granted. Subsequently the plaintiff and defendant agreed to adjourn the motion for preliminary injunction and consented that the restraining order should remain in effect until the court had decided the case upon its merits. A consent order was entered by Judge Levet extending the temporary restraining order until plaintiff's motion for an injunction had been decided.

The plaintiff argues that the order of the Postmaster prohibiting receipt of all mail is illegal on the ground that it exceeds the scope of authority granted under Section 259a of Title 39 U.S.Code, 39 U.S.C.A. § 259a.[1] It is fur-

1. § 259a. Exclusion from mails of obscene, lewd, etc., articles, matters, devices, things, or substances.

"Upon evidence satisfactory to the Postmaster General that any person, firm, corporation, company, partnership,

ther argued that if Section 259a can be interpreted to permit a prohibition of the receipt of all mail, the statute is unconstitutional as a prior restraint under the First Amendment. Plaintiff's affidavit' which is apparently uncontradicted, indicates that only about 40% of his business concerns material which the Post Office Department claimed to be forbidden by the statute. The remaining 60% consists of material against which no charges were directed. Moreover, a number of exhibits which were the subject of charges were found not to be offensive.

A literal reading of the section does not compel the conclusion that only mail against which a factual determination of obscenity has been made may be barred. In Public Clearing House v. Coyne, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092, the Supreme Court considered a fraud statute worded, in relevant portions, almost identically with subsection (a) of Section 259a, and upheld the statute interpreted to permit letters to be detained that had not been factually determined to be connected with a fraudulent enterprise. I conclude that the order of the Postmaster does not exceed the scope of authority granted him under Section 259a.

■ But the plaintiff's most urgent contention is that the section so interpreted is unconstitutional as a prior restraint under the First Amendment, citing Summerfield v. Sunshine Book Company, 95 U.S.App.D.C. 169, 221 F.2d 42, 45, certiorari denied 349 U.S. 921, 75 S.Ct. 661, 99 L.Ed. 1253. In that case, certain nudist magazines, illustrated with photographs, were found after an administrative hearing to be obscene within the meaning of Section 259a, and an order was issued directing the interception and return of all mail addressed to the company. The court formulated the issue thus:

"Should this court then construe Section 259a to authorize the issuance of orders of indefinite duration which hamper or prevent the continuance of the publication and distribution of a magazine—with a substantial and admittedly innocuous text—because its past issues have been found to contain some obscene illustrations, although none of its future issues may contain obscene matter within the meaning of the statute?"

On the basis of the Supreme Court's decision in Donaldson v. Read Magazine, 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628, the court resolved the issue by declaring that the orders must be confined to materials already published, and duly found unlawful. Otherwise, it was said, the

or association is obtaining, or attempting to obtain, remittances of money or property of any kind through the mails for any obscene, lewd, lascivious, indecent, filthy, or vile article, matter, thing, device, or substance, or is depositing or is causing to be deposited in the United States mails information as to where, how, or from whom the same may be obtained, the Postmaster General may—

"(a) instruct postmasters at any post office at which registered letters or any other letters or mail matter arrive directed to any such person, firm, corporation, company, partnership, or association, or to the agent or representative of such person, firm, corporation, company, partnership, or association, to return all such mail matter to the postmaster at the office at which it was originally mailed, with the word 'Unlawful' plainly written or stamped upon the outside thereof, and all such mail matter so returned to such postmasters shall be by them returned to the senders thereof, under such regulations as the Postmaster General may prescribe; and

"(b) forbid the payment by any postmaster to any such person, firm, corporation, company, partnership, or association, or to the agent or representative of such person, firm, corporation, company, partnership, or association, of any money order or postal note drawn to the order of such person, firm, corporation, company, partnership, or association, or to the agent or representative of such person, firm, corporation, company, partnership, or association, and the Postmaster General may provide by regulation for the return to the remitters of. the sums named in such money orders or postal notes.

Postmaster General would be permitted "to prevent—in practical effect—the continued publication of a magazine without any advance knowledge that its future issues will be in violation of law, and thus to suppress putatively lawful activities.[2] Grave constitutional questions would then be presented." But that is far from the situation at bar. The plaintiff does not publish a periodical or engage in a business which by its nature is so distinctly divisible into separate enterprises that one part may not properly be identified with the remainder.[3] Indeed, it appears that he is engaged in a single activity of supplying photographs, cartoons and motion pictures of women classifiable only in the degree of their salaciousness. I do not read Summerfield v. Sunshine Book Company as authority to provide immunity to such a business on the ground that only a substantial portion of it, rather than all of it, is offensive under the statute. It is the kind of a business, as distinguished from that in the Sunshine case, in which it is not too much to assume that *prima facie* all letters are identified with the prohibited enterprise. This reasoning, as set forth by the Supreme Court in Public Clearing House v. Coyne, supra, 194 U.S. at page 510, 24 S.Ct. at page 794, is decisive:

> "Nor do we think the law unconstitutional, because the Postmaster General may seize and detain all letters, which may include letters of a purely personal or domestic character, and having no connection whatever with the prohibited enterprise. In view of the fact that by these sections the postmaster is denied permission to open any letters not addressed to himself, there would seem to be no possible method of enforcing the law except by au-

thorizing him to seize and detain all such letters. It is true it may occasionally happen that he would detain a letter having no relation to the prohibited business; but where a person is engaged in an enterprise of this kind, receiving dozens and perhaps hundreds of letters every day containing remittances or correspondence connected with the prohibited business, it is not too much to assume that, *prima facie* at least, all such letters are identified with such business. A ruling that only such letters as were obviously connected with the enterprise could be detained would amount to practically an annullment of the law, as it would be quite impossible, without opening and inspecting such letters, which is forbidden, to obtain evidence of the real facts."

The Supreme Court specifically declined to overrule the Coyne case in Donaldson v. Read Magazine, 333 U.S. 178, 191, 68 S.Ct. 591, 92 L.Ed. 628. Accordingly, I find that there is no substantial constitutional question to justify the convening of a three-judge statutory court under 28 U.S.C. § 2282. California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323.

The plaintiff vigorously challenges the finding that his publications are obscene. The exhibits in the case consist in part of photographs of models, not nude, described by plaintiff as "pin-up" or "cheesecake" pictures, but described by defendant as "strip-tease" pictures. The greater part of the material, however, consists of sadomasochistic and fetishistic material: photographs, drawings, cartoons and motion pictures of scantily clad women bound, gagged and other-

---

**2.** Footnote omitted.

**3.** In Tourlanes Publishing Company v. Summerfield, 98 U.S.App.D.C. 20, 231 F. 2d 773, certiorari denied 352 U.S. 912, 77 S.Ct. 145, 1 L.Ed.2d 117, the publications issued included a tax guide and other innocuous matter, in addition to

certain pamphlets or magazines found to be obscene by the Post Office Department. In Oakley v. Summerfield, 98 U.S. App.D.C. 22, 231 F.2d 775, there were involved admittedly innocuous books and publications in addition to the photographs found by the Post Office Department to be obscene.

wise fettered; or inflicting and being subjected to varieties of physical punishment or torture, by each other or by means of intricately contrived machines, instruments and devices; or wearing tightly laced, strapped or fastened girdles, boots, belts, hoods, straight jackets, or other similarly constricting clothing. The Hearing Examiner found, on the basis of expert testimony, that the sado-masochistic and fetishistic material would, upon being viewed by those persons subject to certain sexual deviations, tend to cause erotic and lustful sexual stimulation. And he further found, without reference to expert testimony, but on the basis of the material itself, that it would have a similar effect upon the normal average male, offending the present and prevailing standards of decency, modesty and morality of the country.

In connection with the sadistic, masochistic and fetishistic materials, the plaintiff implicitly admits their peculiar appeal and effect. There was expert testimony in the record, disregarded by the examiner, that such materials would induce an erotic sensation in only a minute percentage of the population, and would have no particular effect upon the normal male. Plaintiff contends that, inasmuch as the test of obscenity is the effect upon the normal individual, these pictures cannot be obscene by the legal standard.

In an earlier day, the test of obscenity was that laid down by Lord Cockburn in Regina v. Hicklin, (1868) L.R. 3 Q.B. 360, 369: "Whether the tendency of the matter charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences and into whose hands a publication of this sort may fall." But Judge Learned Hand, in United States v. Kennerly, D.C., 209 F. 119, 121, suggested that the test be modified to permit the word "obscene" to "indicate the present critical point in the compromise between candor and shame at which the community may have arrived here and now * * *". His suggestion has since found its expres-

sion in the law. The classical expression is one by Judge Woolsey in United States v. One Book Called "Ulysses", 5 F.Supp. 182, 184, affirmed 2 Cir., 72 F.2d 705:

"The meaning of the word 'obscene' as legally defined by the courts is: Tending to stir the sex impulses or to lead to sexually impure and lustful thoughts. * * * Whether a particular book would tend to excite such impulses and thoughts must be tested by the court's opinion as to its effect on a person with average sex instincts— what the French would call *l'homme moyen sensuel*—who plays, in this branch of legal inquiry, the same role of hypothetical reagent as does the 'reasonable man' in the law of torts and 'the man learned in the art' on questions of invention in patent law."

See also, United States v. Levine, 2 Cir., 83 F.2d 156; Parmelee v. United States, 72 App.D.C. 203, 113 F.2d 729; Walker v. Popenoe, 80 U.S.App.D.C. 129, 149 F.2d 511; Roth v. Goldman, 2 Cir., 172 F.2d 788, at page 794 in the concurring opinion of Judge Frank; United States v. Harman, D.C., 45 F. 414, 417.

Thus, there is posed by one of the administrative findings the issue of whether material tending to stir the lust of the sexual deviate is obscene under the law. If the standard, in such a case, must be that of the aggregate sense of the community, then certainly this matter cannot be regarded as obscene. But it seems to me that this is not the kind of a case where there is jeopardy of curtailing the right of the public to read or see expressions of art, letters and science out of solicitude for the prurient or peculiarly susceptible. See United States v. Levine, supra, 83 F.2d at page 157. And if one considers, as the Hearing Examiner found beyond the possibility of error, that the pictures were "selected, sold and distributed * * * wholly for the purpose of pandering to the lewd and lascivious (Lynch v. United States, 7 Cir., 285 F. 162)", and if one further considers

those whom the material is likely to reach,[4] United States v. Levine, supra, 83 F.2d at page 157; Parmelee v. United States, supra, 113 F.2d at page 731, then one is inclined to the conclusion that they must be considered obscene under the law. But whether this conclusion is valid or not, the Hearing Examiner made other independent findings upon which his decision may stand.

 The Hearing Examiner found that by any standard, that is, by a standard including the aggregate sense of the community, the pictures are obscene. That a judge might reach a different conclusion is of no consequence. The problem is merely whether there is substantial evidence to support the finding, viewing the record in its entirety. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Administrative Procedure Act, 5 U.S.C. §§ 1001, 1009(e), 5 U.S.C.A. §§ 1001, 1009 (e). So viewing the record, I cannot consider the Hearing Examiner's finding to be palpably erroneous or arbitrary. Certainly, reasonable men may differ on the proposition. As the Court of Appeals for this circuit said in Roth v. Goldman, 2 Cir., 172 F.2d 788, 789: "* * * decision under the law here applicable is committed in the first instance to an administrative official; and under normal rules, therefore, judicial review channelled within the confines of a plea for an injunction should not be overextensive. Certainly material such as this does not afford much stimulus or basis for a finding of abuse of administrative discretion or power."

But plaintiff complains that the examiner disregarded expert testimony[5] to the effect that the sadomasochistic and fetishistic pictures would leave the average male of the community unaffected.[6] It has been suggested that, in obscenity cases, "the expert opinions of psychologists and sociologists would seem to be helpful if not necessary." Parmelee v. United States, supra, 113 F.2d at page 732. But if the test of obscenity is in terms of one analogous to the reasonably prudent man in torts, then one may query the admission of expert testimony of obscenity as being any different from the admission of expert testimony of negligence. In United States v. Levine, supra, 83 F.2d at page 158, the Court of Appeals for this circuit indicated the propriety of evidence of qualified literary or artistic critics, but carefully distinguished such evidence from that of expert witnesses. Perhaps the real answer was put by Judge Frank, who said, concurring in Roth v. Goldman, supra, 172 F.2d at page 796:

"The truth of the matter is that we do not know, with anything that approximates reliability, the 'average' American public opinion on the subject of obscenity. Perhaps we never will have such knowledge. For many years we have heard talk of 'social science,' and some may believe that from that source we may obtain the needed enlightenment. But if 'science' connotes a fairly high degree of accuracy, most studies of society, although by no means useless for all purposes, are further away from the 'scientific' than were alchemy or astrology. Maybe some day we will attain scientific data about community opinion."

At the very most, the expert testimony offered need not be considered so com-

---

4. See Commonwealth v. Isenstadt, 318 Mass. 543, 62 N.E.2d 840, 845.

5. Expert testimony was provided by a psychiatrist, a psychologist, a criminal psychologist and practicing psychoanalyst, and a clinical psychologist, psychotherapist and marriage counselor, all of whom were found by the Hearing Examiner to be highly qualified witnesses on matters pertaining to the subject of sexual behavior.

6. The Hearing Examiner considered the expert testimony on the issue of the effect of the pictures upon individuals of abnormal sex reactions. If pandering to the deviate may be considered obscenity, as I believe it to be, then the Hearing Examiner's procedure was proper, for obviously, the issue of what stirs the lust of the sexual deviate requires evidence of special competence.

pelling as to constrain decision. The expert opinion was given on the problem of the reaction of normal human beings to a particular kind of stimulation, and it is not arbitrary or capricious for a normal human being to have an opinion on the problem even at variance with experts, if they are experts on the particular point in issue. Therefore, I conclude, on the record as a whole, including the expert testimony, that there is substantial evidence to support the examiner's finding.

■ On the so-called "pin-up" or "strip tease" photographs, there can be no question that a reasonable opinion under the general standard of community acceptance might find them obscene. The plaintiff complains that a number of exhibits, which were marked for identification, constituting erotic displays at least as brazen as his photographs, were excluded by the Hearing Examiner. If these exhibits were offered in proof of a community standard, it was unnecessary to receive them. The finder of fact in an obscenity issue is no more required to consider proof of the moral standards of the community than is a jury in a negligence case required to consider proof of the standard of due care. The issue of fact to be tried is whether the material in question is obscene under the standard laid down by the law, and the standard itself is not in issue. Of course, as Judge Learned Hand wrote in United States v. Levine, supra, 83 F.2d at page 157, in passing upon an obscenity conviction, " * * * 'obscenity' is a function of many variables, and the verdict of the jury is not the conclusion of a syllogism of which they are to find only the minor premiss, but really a small bit of legislation ad hoc, like the standard of care." The "legislation" of the administrative finder of fact is subject to judicial review on the basis of the substantial evidence in the whole record. What it comes to, in a case like this, is whether the court is prepared to say that no reasonable man could have found as did the administrative officer; and the answer to that problem depends upon the administrative and judicial conceptions of "the present critical point in the compromise between candor and shame at which the community may have arrived here and now." United States v. Kennerly, supra [209 F. 121]. The level of the general mores is arguable, and the plaintiff makes a strong point in referring to "cheesecake art" in general circulation. It is to be presumed that the administrative officer took such matter into account in arriving at his conception of the "critical point" and it would be impossible to avoid judicial notice of it. Nevertheless, I am not prepared to say, whatever my own opinion may be, that the administrative finding is palpably erroneous, beyond reason, or arbitrary.

■■ Section 259a provides for the imposition of sanctions not only upon persons obtaining or attempting to obtain remittances through the mails for obscene matter, but also upon persons depositing in the mails information about where, how, or from whom it may be obtained. The Hearing Examiner found that the plaintiff deposited or caused to be deposited such information in the mails. While much of the advertising included in the record is obviously addressed to sex deviates, all of it "gives the leer that promises the customer some obscene pictures." United States v. Hornick, 3 Cir., 229 F.2d 120, 121. The subject of this finding is the advertising deposited in the mails and not the materials advertised. Therefore, so long as a come-on is addressed to the prurient, it makes no difference whether the advertised matter itself is obscene or not. Cf. United States v. Hornick, supra. The finding is amply supported by the evidence, and in itself independently supports the postal stop order.

As a further ground for relief, plaintiff urges that he was denied due process by the manner in which the administrative hearing was conducted. He points to the prejudicial admission of hearsay evidence, undue restriction of his cross-examination of witnesses, the illegal exclusion of evidence offered by him and

arbitrary discrimination in violation of the Fifth Amendment.

■ Some hearsay evidence was admitted by the Hearing Examiner, but it has long been settled that "the technical rules for the exclusion of evidence applicable in jury trials do not apply to proceedings before federal administrative agencies in the absence of a statutory requirement that such rules are to be observed." Opp Cotton Mills v. Administrator, 312 U.S. 126, 155, 657, 61 S.Ct. 524, 537, 85 L.Ed. 624. The issue is not whether hearsay was properly admitted, it is whether the hearsay admitted affected the correctness of the administrative findings or had such a harmful or unfair effect as to vitiate the hearing. Willapoint Oysters, Inc. v. Ewing, 9 Cir., 174 F.2d 676; Farley v. Simmons, 69 App.D.C. 110, 99 F.2d 343; Consolidated Edison Co. of New York v. N. L. R. B., 2 Cir., 95 F.2d 390. By this standard, the hearsay admitted by the Hearing Examiner did not fatally taint the proceedings. The letters from members of the public to Post Office Department officials complaining of the material advertised by the plaintiff, while preferably they should have been excluded, had no real effect upon the findings of violation, as the Hearing Examiner stated, and there was an abundance of other evidence thoroughly justifying those findings. The hearsay testimony of an expert witness, relating to the issue of whether sex criminals commit their crimes because they are provoked by the kinds of pictures sold by the plaintiff, was harmless, inasmuch as it was specifically held that the resolution of the issue was irrelevant to the findings.

The restriction of cross-examination complained of was not improper. That the Post Office Department may have had long standing doubts of the obscenity of plaintiff's material is irrelevant to the issue posed, and the preclusion of this line of inquiry was warranted. The limitation of the cross-examination of one of the expert witnesses, a psychiatrist, regarded as hostile to the plaintiff, was not prejudicial. His opinion on the effect of the sadomasochistic and fetishistic material upon the normal male was disregarded by the Hearing Examiner and expert opinion of the general level of morality was not considered as an item of proof. Expert opinion was accepted and considered only on the issue of the effect of the material upon sex deviates, and assuming the utter impeachment of the one witness' credibility, there was ample evidence in the record as a whole to substantiate the administrative finding on this point; and if this finding were to be held invalid, there remain other independent findings unrelated to testimony involving allegedly restricted cross-examinations, amply sufficient to support the order entered.

The exclusion of evidence offered by the plaintiff to establish the level of public acceptance of pictures and drawings as dictated by the community's standards of decency and morality was proper, on the ground, as previously discussed, that the general level of morality—Judge Learned Hand's "critical point"—is not an issue of fact for proof. And the claim of discrimination in the exclusion of such evidence was properly denied by the Hearing Examiner, who ruled that the fact that the material in the publications offered bears a resemblance to some of the plaintiff's pictures is of no materiality; for there was no showing that the other enterprises were unexculpated by sincerity of motive and lack of "profitable pandering", Sunshine Book Co. v. Summerfield, D.C.Cir., —— F.2d ——, or that they were enterprises similar to plaintiff's in kind and manner of operation.

■ Plaintiff's contention, not, however, pressed, that Section 259a is vague and indefinite, not establishing a reasonable standard of non-mailability, has been authoritatively rejected. Swearingen v. United States, 161 U.S. 446, 16 S.Ct. 562, 40 L.Ed. 765; Sunshine Book Company v. Summerfield, D.C., 128 F.Supp. 564, reversed on other grounds, D.C.Cir., —— F.2d ——; Besig v. United States, 9 Cir., 208 F.2d 142; Cf. Parmelee v. United States, supra; United States v. Kennerly, supra. And the argument that the chal-

lenged postal stop order inflicts cruel and unusual punishment in violation of the Eighth Amendment is not well taken. The stop order was not imposed as punishment, it was imposed to prevent access of obscene materials to the mails. That the order may serve also to prevent access of non-offending matter does not convert it into a punishment, on the ground that such an order is proper in a case where *prima facie* all letters are identified with the prohibited enterprise. Public Clearing House v. Coyne, supra. And that the plaintiff's personal mail falls under the sanction is the result of his own election to use the postal facilities to traffic in obscenity in his own name. Moreover, if the net effect of the stop order be thought to constitute punishment, enormous inconvenience that it may be, in this day of almost limitless communication facilities one is hardly incommunicado even without mail, and certainly such a state is not cruel and unusual punishment.

Accordingly, the plaintiff's motion for summary judgment will be denied and the defendant's motion will be granted.