**ONE, Incorporated, a corporation, Appellant,**

v.

**Otto K. OLESEN, individually and as Postmaster of the City of Los Angeles, Appellee.**

**No. 15139.**

United States Court of Appeals Ninth Circuit.

Feb. 27, 1957.

Rehearing Denied April 12, 1957.

Before BARNES and HAMLEY, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

The plaintiff, One Incorporated, a California corporation, is the publisher of the magazine entitled "One", which carries with it the designation, "The Homosexual Magazine", and is published monthly in the City of Los Angeles, California. The defendant, Otto K. Olesen, is the Postmaster of the City of Los Angeles, California.

Plaintiff delivered to the United States Post Office at Los Angeles, California, for transmission to various parts of the United States, several hundred copies of the October 1954 issue of "One", and was subsequently notified by the defendant that all copies so deposited for mailing were being withheld from dispatch for the reason that he considered the October 1954 issue of "One" obscene, lewd, lascivious and filthy, and as such constituted non-mailable matter under the provisions of Section 1461 of Title 18 U.S.C.A., and Section 36.2 of Vol. 29, Code of Federal Regulations (1949). Subsequently, all copies of the magazine were returned by the Postmaster to the plaintiff.

Plaintiff then commenced this action seeking a judgment declaring the October 1954 issue of "One" lawful and mailable, and an injunction against the Postmaster, his agents, servants and employees enjoining them from in any manner failing or refusing to dispatch in the regular course of mail the October 1954 issue of "One."

In the trial court, the parties stipulated that the only issue involved was whether the October 1954 issue of "One" is non-mailable matter under the provisions of 18 U.S.C.A. § 1461, and that such issue should be determined on the motions for summary judgment and the affidavits filed by each of the parties.

The trial court concluded that the Postmaster properly refused to transmit the October 1954 issue of "One" in the United States mails because it constitutes non-mailable matter under the pro-

———◆———

Eric Julber, Beverly Hills, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Marvin P. Carlock and Max F. Deutz, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

visions of 18 U.S.C.A. § 1461. From this adverse judgment, plaintiff appeals and asserts the following specifications of error:

1. The October 1954 issue of "One" is not lewd, lascivious, obscene or filthy, under the standards set forth in 18 U.S.C.A. § 1461, and the Findings of Fact set forth in Paragraph VI of the trial court's Findings of Fact, Conclusions of Law and Judgment, are erroneous as a matter of law and fact.

2. That action of the defendant in refusing to transmit said magazine is arbitrary, capricious and an abuse of discretion, unsupported by evidence, deprives plaintiff of equal protection of the laws and constitutes a deprivation of plaintiff's property and liberty without due process of law, and that therefore, the trial court's Conclusions of Law, specifically Paragraph I thereof, are erroneous as a matter of law and fact.

■ All of the evidence is in writing so we will review the entire evidence, giving due consideration to the findings and conclusions of the trial court. United States v. United States Gypsum Co., 333 U.S. 364, 394, 395, 68 S.Ct. 525, 92 L.Ed. 746; Besig v. United States, 9 Cir., 1953, 208 F.2d 142, 144; Orvis v. Higgins, 2 Cir., 1950, 180 F.2d 537, 539; Equitable Life Assurance Soc. of United States v. Irelan, 9 Cir., 1941, 123 F.2d 462, 464; Rule 52(a) Fed.Rules Civ. Proc. 28 U.S.C.A.

The trial court in Paragraph 6 of its Findings of Fact, referred to by plaintiff in its specifications of error, made the following findings:

1. The story "Sappho Remembered" appearing on pages 12 through 15, is obscene because lustfully stimulating to the homosexual reader.

2. The poem "Lord Samuel and Lord Montagu", appearing on pages 18 and 19, is obscene because of the filthy language used in it.

3. The advertisement for the Swiss publication "The Circle" appearing at the top of page 29, is non-mailable matter because it gives information for the *obtaining of obscene matter.*

Briefly stated, the specifications of error made by plaintiff, raise but one question, namely: Whether or not the October 1954 issue of "One" is non-mailable matter under the provisions of Sec. 1461, Title 18 U.S.C.A.

The pertinent part of Sec. 1461, before the Amendment in 1955, is quoted as follows:

"Every obscene, lewd, lascivious, or filthy book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character; and * * *

"Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles, or things may be obtained or made, * * *, whether sealed or unsealed; * * * is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier. * * *"

Being thus advised we now look into the merits of the appeal. At the outset it is well to dispel any thought that this court is its brothers keeper as to the type of reading to be indulged in. Since the advent of the printing press eminent scholars, including some men of the bench and bar, have uttered and written imperishable words in defense of the freedom of thought and expression, and the place of a free press in a free world. We need not take issue with this gallant host.

As we view this case we are only concerned with the proper application of a postal regulation, a prosaic and every day matter of the administration of the post office department. Section 1461 amounts to no more than that. Approaching the problem in this workaday manner we find that "One" has already suffered two reverses in this connection, the first at the

hands of the Postmaster, the other by reason of the judgment of the District Court sustaining the Postmaster's ruling. At this point it can be observed that there is no dispute on factual matters.

The District Court found that the ruling of the Postmaster was reasonable and supported by the proof—the contents of the magazine. Unless we find that the initial order of the Postmaster barring the magazine from the mails was arbitrary, or capricious, or an abuse of discretion, or that there are no reasonable grounds in the record to support the District Court in upholding the Postmaster's order, we are required to sustain.

 Our problem here is one of the administration of the post office, and that in turn depends on whether or not the matter sought to be mailed, in this instance the October 1954 issue of the magazine "One", is obscene, lewd, lascivious, filthy or indecent. These words can only be defined by some discussion of the moral sense of the public, and it is only to such extent that we are concerned with public morals. In approaching the moral side of the issue here presented we are not unmindful of the fact that morals are not static like the everlasting hills, but are like the vagrant breezes to which the mariner must ever trim his sails.

The problem here posed cannot, however, be disposed of in a cavalier manner, for we are dealing with intangibles. Our ultimate conclusion as to whether the magazine is mailable or not must be based upon the effect, or impact, that the wording of the various articles in the magazine have upon the reader. There is no precise pattern for reader reaction, so in determining whether the thought patterns created by the words employed in the magazine articles are obscene, lewd, lascivious, filthy or indecent, we must ascertain how other courts met the problem.

Much is now presented to the public, through eye and ear, which would have been offensive a generation ago, but does not today merit a second thought as to propriety. None the less, so long as statutes make use of such words as obscene, lewd, lascivious, filthy and indecent, we are compelled to define such expressions in the light of today's moral dictionary, even though the definition is at best a shifting one.

The words of the statute, "obscene", "lewd", lascivious", "filthy" and "indecent", are words of common usage and meaning. In considering the scope and meaning of the words the courts have, through the course of the years, given to such words legal definitions and distinctions, following very closely, if not precisely, the definitions and distinctions found in the recognized standard dictionaries.

Mr. Justice Harlan in delivering the opinion of the court in Rosen v. United States, 161 U.S. 29, 43, 16 S.Ct. 434, 438, 40 L.Ed. 606, said, "Every one who uses the mails of the United States for carrying papers or publications must take notice of what, in this enlightened age, is meant by decency, purity, and chastity in social life, and what must be deemed obscene, lewd, and lascivious." In that case the court approved the following test of obscenity given in an instruction of the trial court: "The test of obscenity is whether the tendency of the matter is to deprave and corrupt the morals of those whose minds are open to such influence and into whose hands a publication of this sort may fall." "Would it * * * suggest or convey lewd thoughts and lascivious thoughts to the young and inexperienced?"

In Dunlop v. United States, 165 U.S. 486, 500, 501, 17 S.Ct. 375, 380, 41 L.Ed. 799, the Supreme Court approved the following instruction:

"Now what are obscene, lascivious, lewd, or indecent publications is largely a question of your own conscience and your own opinion; but it must come—before it can be said of such literature or publication—it must come up to this point: that it must be calculated with the ordinary reader to deprave him, deprave his morals, or lead to impure purposes.

* * * It is your duty to ascertain, in the first place if they are calculated to deprave the morals; if they are calculated to lower that standard which we regard as essential to civilization; if they are calculated to excite those feelings which, in their proper field, are all right, but which, transcending the limits of that proper field, play most of the mischief in the world."

In Swearingen v. United States, 161 U.S. 446, 16 S.Ct. 562, 40 L.Ed. 765, the Supreme Court in distinguishing matter which is coarse and vulgar, from obscene, lewd and lascivious matter, held that coarse and vulgar language is not within the meaning of the words, obscene, lewd and lascivious. It was said that the words "obscene", "lewd" and "'lascivious", as used in the Statute, signify that form of immorality which has relation to sexual impurity, and that it could not perceive of anything in the coarse and vulgar language used in the questioned letter, which was of a lewd, lascivious and obscene tendency, calculated to corrupt and debauch the mind and morals of those into whose hands it might fall.

The Supreme Court in United States v. Limehouse, 285 U.S. 424, 52 S.Ct. 412, 76 L.Ed. 843, distinguished filthy matter from obscene, lewd or lascivious matter in holding that filthy material constituted a new class of non-mailable matter.

The Sixth Circuit in Tyomies Publishing Co. v. United States, 211 F. 385, at page 390, defined the word "filthy" as meaning " 'that which is nasty, dirty, vulgar, indecent, offensive to the moral senses, morally depraving and debasing.' "

This Court in Magon v. United States, 248 F. 201, noted it had been uniformly held in construing the word "obscene", as used in the particular statute, that if the matter were of such nature as would tend to corrupt the morals of those whose minds are open to such influences by arousing or implanting in such minds lewd or lascivious thoughts or desires, it is within the prohibition of the statute.

In Duncan v. United States, 48 F.2d 128, on page 132, we stated that the test is whether or not the language alleged to be obscene would arouse lewd or lascivious thoughts in the minds of those hearing or reading the publication. The definition and meaning of the words obscene, lewd and lascivious were again considered by this court in Burstein v. United States, 1949, 178 F.2d 665, and in Besig v. United States, 1953, 208 F.2d 142.

Judge Pope, in Burstein v. United States, 9 Cir., 178 F.2d 665, 666, approved the following instruction defining obscene, lewd, or lascivious:

"Matter is obscene, lewd, or lascivious, within the meaning of the quoted statute, if it is offensive to the common sense of decency and modesty of the community, and tends to suggest or arouse sexual desires or thoughts in the minds of those who by means thereof may be depraved or corrupted in that regard. The true inquiry in this case is whether or not the publication charged to have been obscene was in fact of that character, and if it was, and the defendant knew its contents at the time he deposited it in the mail, it is not material that he, himself, did not regard it as obscene * * * The true test to determine whether a writing is nonmailable as obscene, lewd, or lascivious is whether its language has a tendency to deprave or corrupt the morals of those whose minds are open to such influences and into whose hands it may fall by allowing or implanting in such minds obscene, lewd, or lascivious thoughts or desires."

For another definition of the words obscene, lewd, lascivious, filthy and indecent, and an attempted differentiation, see Sunshine Book Company v. Summerfield, D.C., 128 F.Supp. 564, 568. There the court said:

"Those definitions are the beacons by which the legal channel is lighted for the Court * * *".

When the approved definitions and tests are applied to certain articles in the "One" magazine, it is apparent that the magazine is obscene and filthy and is therefore non-mailable matter.

Plaintiff, as publisher, states on the second page of the magazine that it is published for the purpose of dealing primarily with homosexuality from the scientific, historical and critical point of view—to sponsor educational programs, lectures and concerts for the aid and benefit of social variants and to promote among the general public an interest, knowledge and understanding of the problems of variation. The story "Sappho Remembered", appearing on pages 12 to 15 of the magazine, the poem "Lord Samuel and Lord Montagu" on pages 18 and 19, and the information given on page 29 as to where to obtain "The Circle", a magazine "with beautiful photos", do not comport with the lofty ideals expressed on page 2 by the publishers.

The article "Sappho Remembered" is the story of a lesbian's influence on a young girl only twenty years of age but "actually nearer sixteen in many essential ways of maturity", in her struggle to choose between a life with the lesbian, or a normal married life with her childhood sweetheart. The lesbian's affair with her room-mate while in college, resulting in the lesbian's expulsion from college, is recounted to bring in the jealousy angle. The climax is reached when the young girl gives up her chance for a normal married life to live with the lesbian. This article is nothing more than cheap pornography calculated to promote lesbianism. It falls far short of dealing with homosexuality from the scientific, historical and critical point of view.

The poem "Lord Samuel and Lord Montagu" is about the alleged homosexual activities of Lord Montagu and other British Peers and contains a warning to all males to avoid the public toilets while Lord Samuel is "sniffing round the drains" of Piccadilly (London). The poem pertains to sexual matters of such a vulgar and indecent nature that it tends to arouse a feeling of disgust and revulsion. It is dirty, vulgar and offensive to the moral senses. Swearingen v. United States, 161 U.S. 446, 16 S.Ct. 562, 40 L.Ed. 765; United States v. Limehouse, 285 U.S. 424, 426, 52 S.Ct. 412, 76 L.Ed. 843; Tyomies Publishing Co. v. United States, 6 Cir., 1914, 211 F. 385, 390; United States v. Roth, 2 Cir., 237 F.2d 796, 799, 800.

An article may be vulgar, offensive and indecent even though not regarded as such by a particular group of individuals constituting a small segment of the population because their own social or moral standards are far below those of the general community. Social standards are fixed by and for the great majority and not by or for a hardened or weakened minority. As this Court said in Besig v. United States, 208 F.2d 142, at page 145:

"It is of course true that the ears of some may be so accustomed to words which are ordinarily regarded as obscene that they take no offense at them, but the law is not tempered to the hardened minority of society. The statute forbidding the importation of obscene books is not designed to fit the normal concept of morality of society's dregs, nor of the different concepts of morality throughout the world, nor for all time past and future, but is designed to fit the normal American concept in the age in which we live. It is no legitimate argument that because there are social groups composed of moral delinquents in this or in other countries, that their language shall be received as legal tender along with the speech of the great masses who trade ideas and information in the honest money of decency."

It is difficult to determine if the article contained on page 29 under the caption "Foreign Books and Magazines That Will Interest You", is an advertisement for the magazine "The Circle" or is merely information given by the publisher of "One" to its readers as to where to obtain other books and magazines that may be of interest. Re-

gardless, the situation is the same, if information is given as to where, or how, or from whom, or by what means, obscene or filthy material may be obtained. Although on its face the information in this article appears harmless, it cannot be said that the purpose is harmless. It is for the information of those who read the magazine and particularly the homosexuals. It conveys information to the homosexual or any other reader as to where to get more of the material contained in "One."

An examination of "The Circle" clearly reveals that it contains obscene and filthy matter which is offensive to the moral senses, morally depraving and debasing, and that it is designed for persons having lecherous and salacious proclivities.

The picture and the sketches are obscene and filthy by prevailing standards. The stories "All This and Heaven Too", and "Not Til the End", pages 32–36, are similar to the story "Sappho Remembered", except that they relate to the activities of the homosexuals rather than lesbians. Such stories are obscene, lewd and lascivious. They are offensive to the moral senses, morally depraving and debasing. Such literature cannot be classed as historical, scientific and educational for any class of persons. Cheap pornography is a more appropriate classification.

Plaintiff contends that the magazine "One" when read as a whole is not obscene or filthy within the meaning of these words. In Besig v. United States, supra, we held that the book as a book must be obscene to justify its libel and destruction, but we also held that neither the number of the "objectionable" passages nor the proportion they bear to the whole book are controlling. The magazine under consideration, by reason of the articles referred to, has a primary purpose of exciting lust, lewd and lascivious thoughts and sensual desires in the minds of the persons reading it. Moreover, such articles are morally depraving and debasing. The articles

mentioned are sufficient to label the magazine as a whole, obscene and filthy.

In Parmelee v. United States, 72 App. D.C. 203, 113 F.2d 729, 730, speaking of the "book as a whole" doctrine, the court having before it a related problem, said:

"Although the word [obscene] has been variously defined, the test in many of the earlier cases was that laid down by Lord Chief Justice Cockburn in Regina v. Hicklin [3 Q.B. 360, 369, 1868], as follows: ' * * * whether the tendency of the matter charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands a publication of this sort may fall.' And the rule was applied to those portions of the book charged to be obscene rather than to the book as a whole. But more recently this standard has been repudiated, and for it has been substituted the test that a book must be considered as a whole, in its effect, not upon any particular class, but upon all those whom it is likely to reach."

The point that the action of the defendant in refusing to transmit the magazine in the United States mails, is arbitrary, capricious, an abuse of discretion and unsupported by the evidence, is without merit. The only argument to sustain this point is that the magazine is not obscene or filthy under the standards set forth in 18 U.S.C.A. § 1461. We have decided otherwise.

■ Plaintiff also contends that it has been deprived of the equal protection of the laws. In the trial court, plaintiff stipulated that the only issue involved was whether the October 1954 issue of "One" is non-mailable matter under the provisions of 18 U.S.C.A. § 1461, and that such issue should be determined on the motions for summary judgment and the affidavits filed by each of the parties. There is nothing in the record to show that plaintiff has been denied the equal protection of the laws.

Section 1461, Title 18 U.S.C.A. is applicable to all matter declared by the statute to be non-mailable, without regard to the character of the persons or class of persons seeking to use the mails for the dissemination of non-mailable matter.

Plaintiff's contention that there has been a denial of due process of law is without merit. Plaintiff commenced this action in the trial court and stipulated that the only issue in the case should be determined by the court on the motions for summary judgment and the affidavits filed by each of the parties. There has been a full and fair trial upon proper notice and the issues presented. It does not appear from the record that plaintiff has been deprived of property or liberty without due process of law.

Based upon our comments and observations heretofore given we hold that the record discloses no prejudicial error and the judgment appealed from is affirmed.