Steve **VOLANSKI**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 12968.

United States Court of Appeals
Sixth Circuit.

June 7, 1957.

Michael A. Picciano and Alan Meltzer, Cleveland, Ohio, for appellant.

James Carroll, Cleveland, Ohio (Sumner Canary, Cleveland, Ohio, on the brief), for appellee.

Before MARTIN, MILLER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

This is an appeal from a judgment of conviction and sentence of appellant to three years' imprisonment under an indictment charging that he knowingly took, accepted and received from an express company in Cleveland, Ohio, a shipment from Baltimore, Maryland, of three cartons containing numerous twelve-set, lewd, obscene and lascivious pictures in violation of Section 1462, Title 18 U.S.C.A. The case was tried to the district judge without intervention of a jury.

Each set of the pictures in question consists of twelve photographs of a young woman in various poses and various stages of undress. In none of the frontal views is the subject totally unclothed below her waist. In some of the posterior views she is. The photographs are without even tenuous pretensions to artistic or scientific merit. They are unaccompanied by any text. Although some of the poses are rather bizarre, no subject is shown engaged in any indecent or immoral activity.

Despite the objection of appellant's counsel a psychiatrist was permitted at the trial to state his opinion as to the effect that the pictures would have upon sadists, masochists, and other types of sexual deviates, and also to state his expert opinion that the pictures would have an undesirable effect upon juveniles. That the court's decision was based in large part on this evidence is revealed by the trial judge's oral opinion.[1]

1. For example, the district judge said: "What about the poor, weak-minded people who have the stimulus and do not have the will power to reject acting upon it? This almost gets down to a business for stimulation of the imaginations of perverts, doesn't it? People of perverted minds and perverted tendencies who get their dollar's worth out of this sort of dirty picture. * * * What about

The admission of this evidence was prejudicial error. Obscenity is not to be measured by the reactions of any particular class or group of the population, but by the standard of the community as a whole. Perhaps the best known American decision in this field of law is United States v. One Book Entitled "Ulysses," 2 Cir., 1934, 72 F.2d 705, affirming D.C.S.D.N.Y., 1933, 5 F. Supp. 182. District Judge Woolsey's opinion in that case admirably states the correct test of obscenity. What must be measured is "its effect on a person with average sex instincts—what the French would call *l'homme moyen sensuel*—who plays, in this branch of legal inquiry, the same role of hypothetical reagent as does the 'reasonable man' in the law of torts and 'the man learned in the art' on questions of invention in patent law." 5 F.Supp. 184. "It is only with the normal person that the law is concerned." 5 F.Supp. 185.

This now generally accepted test seems to have been first advanced by Learned Hand, then a district judge, when he said, "To put thought in leash to the average conscience of the time is perhaps tolerable, but to fetter it by the necessities of the lowest and least capable seems a fatal policy." United States v. Kennerley, D.C.S.D.N.Y., 1913, 209 F. 119, 121.

In recent years other courts have postulated this standard in a variety of verbal forms. " 'The test is not whether it would arouse sexual desires or sexually impure thoughts in those comprising a particular segment of the community, the young, the immature or the highly prudish. * * * In other words, you must determine its impact upon the average person in the community.' " United States v. Roth, 2 Cir., 1956, 237 F.2d 796, 801, footnote 1 (quoting the trial court's instructions to the jury). "Social standards are fixed by and for the great majority and not by or for a hardened or weakened minority." One,

Incorporated v. Olesen, 9 Cir., 1957, 241 F.2d 772, 777. "A picture is not to be banned as obscene because of its possible effect, not upon the average citizen but only upon the irresponsible, the immature, or the sensually minded." Maryland State Board of Motion Picture Censors v. Times Film Corp., 1957, 212 Md. 454, 129 A.2d 833, 837. "It is believed that the cases establish that the 'standard of the community' has been substituted for the 'standard of the weak and susceptible', at least where there is no evidence of sales to the latter." Parmelee v. United States, 1940, 72 App. D.C. 203, 113 F.2d 729, 739, footnote 5, dissenting opinion by Vinson, J. "[T]he law is not tempered to the hardened minority of society." Besig v. United States, 9 Cir., 1953, 208 F.2d 142, 145. See, also, United States v. Levine, 2 Cir., 1936, 83 F.2d 156; Burstein v. United States, 9 Cir., 1949, 178 F.2d 665.

The danger of a standard that would measure what is obscene by its effect upon abnormal people is illustrated by the testimony of the psychiatrist in the present case. He testified that some people "gain particular stimuli" by looking at the female foot, and that others, "may get aroused sexual desires" by seeing an article of women's clothing in the window of a department store.

Without question the pictures in this case are at best vulgar trash. Without question the appellant's motives in purveying them were ignoble. This court is aware that the availability to juveniles of publications and pictures thought to contribute to delinquent conduct is a matter of deep concern to many. If the causal effect of such material upon juvenile delinquency is demonstrable, it may be assumed that an unambiguous statute specifically prohibiting its distribution by interstate commerce to juveniles would be a valid exercise of Congressional power. But Congress has not enacted that kind of a law.

the poor half-witted kids who don't have that doctor's education and training and

power of control? What about the people who are a little off?"

Under the existing statute with which we are here concerned, to measure what is obscene by its effect upon juveniles would encounter a formidable Constitutional barrier. In Butler v. State of Michigan, 1957, 352 U.S. 380, 77 S.Ct. 524, 526, 1 L.Ed.2d 412, the Supreme Court held unconstitutional a state law forbidding the general sale or distribution of publications containing obscene language or pictures that tended to incite minors to immoral acts or to corrupt them. The Court said: "We have before us legislation not reasonably restricted to the evil with which it is said to deal. The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children. It thereby arbitrarily curtails one of those liberties of the individual, now enshrined in the Due Process Clause of the Fourteenth Amendment, that history has attested as the indispensable conditions for the maintenance and progress of a free society."

■ For the reasons stated the judgment of conviction must be set aside. A majority of the court, unable to hold as a matter of law that by the proper test the pictures are not obscene, believe the case should be remanded to the district court for a new trial. 28 U.S. C.A. § 2106; Bryan v. United States, 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335.

The question in our opinion is peculiarly one best left for *nisi prius* determination, preferably by a jury. " * * * [T]he problem is to find a passable compromise between opposing interests, whose relative importance, like that of all social or personal values, is incommensurable. We impose such a duty upon a jury * * *, because the standard they fix is likely to be an acceptable mesne, and because in such matters a mesne most nearly satisfies the moral demands of the community. * * * '[O]bscenity' is a function of many variables, and the verdict of the jury is not the conclusion of a syllogism of which they are to find only the minor premiss, but really a small bit of leg-

islation *ad hoc*, like the standard of care." United States v. Levine, 2 Cir., 1936, 83 F.2d 156, 157. A trial court can best determine "the present critical point in the compromise between candor and shame at which the community may have arrived here and now." A trial court, particularly with the aid of a jury, can best determine "the average conscience of the time." United States v. Kennerley, D.C.S.D.N.Y. 1913, 209 F. 119, 121.

We do not reach the searching Constitutional questions so exhaustively explored by the late Judge Frank, concurring in United States v. Roth, 2 Cir., 1956, 237 F.2d 796, 801, certiorari granted, 1957, 352 U.S. 964, 77 S.Ct. 361, 1 L.Ed.2d 319.

The judgment is set aside and the case is remanded for a new trial.

MARTIN, Circuit Judge (dissenting).

In my view, expressed in conference and in a proposed opinion before the majority opinion was written, the judgment of conviction and sentence in this case should be reversed and the case *dismissed*. It is true that the trial court erred in admitting the testimony of a psychiatrist concerning the effect these pictures would have, not only on normal males but also on sexual perverts, such as sadists and masochists, and on adolescent youth; and that the correct applicable test is what effect viewing pictures like those in evidence here would have on *normal-minded* people. See opinion of Judge Learned Hand in United States v. Levine, 2 Cir., 83 F.2d 156. Applying this test, I think these pictures would have no greater effect upon normal people than would the widely distributed magazine pictures of semi-clad females and similar pictures irrelevantly displayed on book covers and even on detective and murder-mystery novels. Each of the photographs exhibited in this case depicts a partly-clothed woman. None of them shows a front view of a completely nude female figure.

In a case decided recently [Alfred E. Butler v. State of Michigan, February

25, 1957, 352 U.S. 380, 77 S.Ct. 524, 526, 1 L.Ed.2d 412], the Supreme Court reversed a conviction in a Michigan criminal court under a statute of that state making it an offense for any person to make available for the general reading public a book which the trial judge found would have a deleterious influence upon youth. The Supreme Court rejected the insistence of the State of Michigan that, by thus quarantining the general public against books not too rugged for grown men and women in order to shield juvenile innocence, the state is exercising its power to promote the general welfare. Mr. Justice Frankfurter commented: "Surely, this is to burn the house to roast the pig." The opinion concluded: "We have before us legislation not reasonably restricted to the evil with which it is said to deal. The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children. It thereby arbitrarily curtails one of those liberties of the individual, now enshrined in the Due Process Clause of the Fourteenth Amendment, that history has attested as the indispensable conditions for the maintenance and progress of a free society. We are constrained to reverse this conviction." The principle of the Butler case bears true analogy here.

My opinion is not to be construed as placing approval upon the distribution of lascivious literature or pictures, but is limited to the facts encountered in the instant case, which, in my judgment, are inadequate to constitute a showing that appellant should be subject to the criminal sanctions of the federal statute under which he was indicted, tried and convicted. In a case tried by me, without the intervention of a jury, while sitting in the United States District Court at Pittsburgh, I convicted and sentenced to limit punishment a distributor of lewd, obscene and lascivious pictures. [United States v. Saxton]. But in the instant case, I cannot so classify the photographs exhibited in evidence. The judges of this court are in as good posi-

tion as is the able trial judge to view the pictures and classify them as within or without the ban of the statute. Having carefully inspected the photographs, my conscience would not rest easily upon sending a person to jail for handling them.

My thought is that a new trial would be a futile waste of time, money and effort. For my part, I could not, as an appellate judge, vote to affirm a second conviction should one ensue. I think the case should be dismissed.