The STATE of Ohio, Appellee,

v.

WILLIAMS, Appellant.

[Cite as *State v. Williams* (1991), 75 Ohio App.3d 102.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–638.

Decided July 2, 1991.

*Michael Miller*, Prosecuting Attorney, *William John Owen, II* and *Carol Hamilton O'Brien; Ronald J. O'Brien*, City Attorney, *James J. Fais*, City Prosecutor, and *Thomas K. Lindsey*, for appellee.

*Klein & Shafer* and *Lee J. Klein*, for appellant.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Garrett E. Williams, appellant, from a judgment of conviction and sentence entered against him following a jury trial in the Franklin County Municipal Court. Appellant was charged with and convicted of pandering obscenity in violation of R.C. 2907.32(A)(2). On appeal to this court, appellant sets forth the following assignments of error:

#### "Assignment of Error I

"The trial court erred (abused its discretion) in unduly restricting the conducting of voir dire by appellant.

#### "Assignment of Error II

"The trial court erred in excluding appellant's proffered public opinion poll and testimony relative thereto.

#### "Assignment of Error III

"The trial court erred in refusing to admit, or take any testimony regarding alleged 'comparable' materials.

#### "Assignment of Error IV

"The trial court erred, by both restricting and prohibiting appellant's attempts to introduce evidence of contemporary community standards in violation of appellant's sixth amendment rights.

#### "Assignment of Error V

"The trial court erred in failing to grant appellant's motion to determine, pre-trial, the definition of 'prurient appeal' and 'patent offensiveness.'

#### "Assignment of Error VI

"The trial court erred in denying appellant's motion for judgment of acquittal due to the prosecution's failure to put on any testimony regarding contemporary community standards.

#### "Assignment of Error VII

"The trial court erred by failing to instruct the jury that 'prurient appeal' be measured by the *impact and effect* of the material on the average person.

"Assignment of Error VIII

"The trial court erred in not defining contemporary community standards regarding patent offensiveness based upon a standard of what is generally 'tolerated' in the community as a whole.

"Assignment of Error IX

"The trial court erred in failing to instruct the jury that all three parts of the *Miller* test for obscenity must exist, at the same time, in addition to the Ohio Obscenity Statute before the appellant can be convicted.

"Assignment of Error X

"The trial court erred in failing to instruct the jury that appellant was entitled to a verdict of not guilty if the jury could not ascertain the applicable contemporary community standards.

"Assignment of Error XI

"The trial court erred by improperly instructing the jury as to the definition of 'prurient interest.'

"Assignment of Error XII

"The trial court erred in failing to instruct the jury as to the definition of 'average person.'

"Assignment of Error XIII

"The trial court erred by failing to instruct the jury that the [allegedly obscene] material was to be considered 'as a whole' in applying the three part test for obscenity set forth in *Miller v. California*, 413 U.S. 15 [93 S.Ct. 2607, 37 L.Ed.2d 419] (1973).

"Assignment of Error XIV

"The trial court erred in failing to instruct the jury that the 'serious value' prong of the *Miller* test is not to be judged by contemporary community standards or limited by geographic boundaries and further that if a reasonable person could find value in the material, that it would not be obscene.

"Assignment of Error XV

"The trial court misled the jury as to the proper definition of 'contemporary community standards' in its various evidentiary rulings."

During the pendency of this appeal, appellant died on January 4, 1991. Pursuant to App.R. 29(A) and *State v. McGettrick* (1987), 31 Ohio St.3d 138, 31 OBR 296, 509 N.E.2d 378, Garrett W. Pittinger, administrator of appellant's estate, was substituted for the appellant.

■ In the first assignment of error, appellant argues that the trial court abused its discretion by unduly restricting the voir dire examination of appellant's defense counsel. Appellant contends that by limiting the scope of his voir dire examination, appellant was unable to determine potential biases of the prospective jurors and was, thereby, deprived of his right to trial by a fair and impartial jury.

■ The right to be tried by a fair and impartial jury of one's peers is a fundamental right guaranteed a criminal defendant under the Sixth Amendment to the United States Constitution. *Irvin v. Dowd* (1961), 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751. The purpose of the voir dire examination of a prospective juror is to determine whether the prospective juror has both the statutory qualifications of a juror and is free from bias or prejudice for or against either party. *Dowd–Feder, Inc. v. Truesdell* (1936), 130 Ohio St. 530, 5 O.O. 179, 200 N.E. 762, paragraph one of the syllabus. Voir dire examination, where not specifically controlled by statute, is largely in the discretion of the trial judge, and no prejudicial error can be assigned in connection with such examination unless there is shown to be a clear abuse of such discretion. *State v. Ellis* (1918), 98 Ohio St. 21, 120 N.E. 218, paragraph one of the syllabus; *State v. Procter* (1977), 51 Ohio App.2d 151, 156, 5 O.O.3d 309, 311, 367 N.E.2d 908, 912; *State v. Swanson* (1984), 16 Ohio App.3d 375, 16 OBR 430, 476 N.E.2d 672. An abuse of discretion connotes more than just an error of law. It exists where the court's attitude, evidenced by its decision, was unreasonable, arbitrary or unconscionable. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 360, 473 N.E.2d 264, 313.

Appellant's counsel sought to inquire as to whether or not any of the prospective jurors believed that the viewing of sexually explicit material was bad or harmful. The trial court restricted any questioning along these lines. Additionally, appellant's counsel sought to determine whether or not the prospective jurors harbored any bias or prejudice against adult book stores in general. The trial court prevented any questioning along these lines as well.

In both instances, the trial court indicated that it believed that these two particular questions would serve to confuse the issues and mislead the jury. It is within the sound discretion of the trial court to make such a decision during the voir dire examination of prospective jurors. This case does not involve any action against the adult book store industry in general nor does it concern the particular adult book store in which this movie was purchased. Likewise, the issue involved does not center on whether or not the jurors believe sexually explicit movies are bad or harmful. The issue is whether or not the movie "Pleasure Games" is obscene. Upon review of the entire voir

dire examination, the trial court did not abuse its discretion and the appellant was not prejudiced by the exclusion of those two particular questions.

Appellant's counsel was permitted to question the prospective jurors as to whether or not they had seen x-rated movies, if they belonged to any video clubs which rented x-rated movies, or if they or their spouses subscribed to any sexually explicit magazines. Appellant's counsel was also allowed to question the prospective jurors as to their opinion concerning nudity in films and whether or not they had any personal biases or attitudes about sexually explicit materials which would affect them in one way or another in determining this case. Appellant's counsel was free to inquire as to the personal attitudes of the prospective jurors with regard to this type of material and he had ample opportunity to determine the potential biases of the prospective jurors.

Accordingly, this court finds that the trial court did not abuse its discretion in limiting the scope of the voir dire examination and appellant's first assignment of error is overruled.

■ Appellant's sixth assignment of error will be considered next. In the sixth assignment of error, appellant contends that the trial court erred in denying his motion for a judgment of acquittal due to the prosecution's failure to put on any testimony regarding contemporary community standards.

The Ohio Supreme Court stated as follows, at paragraph four of the syllabus of *Urbana ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, 539 N.E.2d 140:

"If the materials alleged to be obscene are admitted into evidence, there is no need for lay witnesses to testify on whether they think those materials are obscene. (*Paris Adult Theatre I v. Slaton* [1972], 413 U.S. 49 [93 S.Ct. 2628, 37 L.Ed.2d 446], followed.)"

The court further stated at 113, 539 N.E.2d at 144:

"The United States Supreme Court has stated that if the materials alleged to be obscene are placed into evidence, they 'are the best evidence of what they represent' and that expert testimony is not necessary to establish that they are obscene unless the materials are 'directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the material appeals to the prurient interest' * * *." (Citations omitted.)

Accordingly, the trial court did not err in denying appellant's motion for judgment of acquittal and appellant's sixth assignment of error is not well taken and is overruled.

In the second assignment of error, appellant argues that the trial court erred by excluding appellant's proffered public opinion poll and testimony relative to the data collected. Appellant urges this court to apply the test set forth in *Saliba v. State* (Ind.App.1985), 475 N.E.2d 1181. Likewise, in his fourth assignment of error, appellant argues that the trial court erred by restricting and prohibiting his attempts to introduce evidence of contemporary community standards. These two assignments of error are interrelated and will be addressed together.

The parties argued at trial, and the trial court accepted as true, that the use of telephone survey evidence proffered by appellant in this case was a case of first impression in the state of Ohio. In fact, the trial court specifically found that survey evidence has never been permitted as evidence in a criminal case in Ohio.

In *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 560 N.E.2d 765, the Ohio Supreme Court reviewed a nuisance conviction which had been upheld by the Lucas County Court of Appeals. From the opinion, it becomes apparent that Dr. Joseph Scott, the same witness who was not permitted to testify in the present case concerning the proffered results of the telephone survey, conducted a random scientific survey regarding the sexual attitudes of the residents of Lucas county. *Id.* at 42, 560 N.E.2d at 766. Dr. Scott's testimony related to whether or not the materials at issue were obscene as that word is defined in R.C. 2907.01(F) and *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419. Based on all the evidence presented, the trial court concluded that the state had failed to demonstrate that the materials at issue were obscene. Dr. Scott also testified as to his opinion concerning the conclusions an average person in Lucas county would make regarding the prurient interest issue.

Although the *Strope* case does not stand for the proposition that the Ohio Supreme Court has upheld the admissibility of survey evidence in an obscenity case, a review of that decision and the appellate court's decision indicates that this type of evidence has been admitted in trials in Ohio concerning the central issue involved in the present case: whether or not certain materials are obscene. Furthermore, this type of evidence has also been admitted in trial courts in Cuyahoga County. In *Cleveland v. Frank* (Mar. 1, 1990), Cuyahoga App. No. 56426, unreported, 1990 WL 19321, the testimony of Dr. Joseph Scott was again admitted with regard to a random telephone survey using a multiple response questionnaire on the topic of contemporary community standards of Cleveland adults relative to explicit sexual material. Contrary to the trial court's conclusion, clearly there is precedent in the state of Ohio for the admission of random telephone surveys as evidence in obscenity cases

with regard to the ultimate issue of whether or not the materials at issue are obscene according to law.

■ In an obscenity trial, the trier of fact must determine, among other factors, whether the average person applying contemporary community standards would find that the work taken as a whole appeals to the prurient interest. *Miller, supra*, 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431. " '[T]he term "average person" does not include any number of people, the majority, or a few, or some, but is a term connoting a composite or synthesis of the community.' *United States v. Treatman* (C.A.8, 1975), 524 F.2d 320, 323. * * * For purposes of the *Miller* test, the average person is one with average sex instincts. *Volanski v. United States* (C.A.6, 1957), 246 F.2d 842, 844 [3 O.O.2d 516, 517]." *Newlin, supra*, 43 Ohio St.3d at 112, 539 N.E.2d at 144.

In *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, the United States Supreme Court stated that if the materials alleged to be obscene are placed into evidence, they " * * * are the best evidence of what they represent. * * * " The Supreme Court also found that expert testimony is not necessary to establish that such materials are obscene unless the materials are "directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge whether the material appeals to the prurient interest. * * * " *Paris Adult Theatre I*, at 56, 93 S.Ct. at 2634, 37 L.Ed.2d at 456, fn. 6 (citing *Mishkin v. New York* [1966], 383 U.S. 502, 508–510, 86 S.Ct. 958, 963–964, 16 L.Ed.2d 56, 61–63).

However, the question becomes, if a defendant is to present a defense, what kind of evidence can a defendant present to demonstrate that the materials at issue would not be obscene. In his concurring opinion in *Smith v. People* (1959), 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205, Justice Frankfurter stated as follows with regards to the admissibility of some type of expert testimony which goes to the determination of contemporary community standards:

" * * * The determination of obscenity no doubt rests with judge or jury. Of course the testimony of experts would not displace judge or jury in determining the ultimate question whether the particular book is obscene, any more than the testimony of experts relating to the state of the art in patent suits determines the patentability of a controverted device.

"There is no external measuring rod for obscenity. Neither, on the other hand, is its ascertainment a merely subjective reflection of the taste or moral outlook of individual jurors or individual judges. Since the law through its functionaries is 'applying contemporary community standards' in determining what constitutes obscenity, *Roth v. United States*, 354 U.S. 476, 489 [77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498, 1509], it surely must be deemed rational, and

therefore relevant to the issue of obscenity, to allow light to be shed on what those 'contemporary community standards' are. \* \* \*" *Id.*, 361 U.S. at 165, 80 S.Ct. at 225, 4 L.Ed.2d at 218.

■ Consequently, a properly conducted opinion poll may be relevant to a determination of whether the particular film in question is obscene. On the issue of relevance, the poll must be relevant to a determination of both community standards in general and the community's acceptance of viewing the particular film in question. The majority of the community need not desire to view the sexually explicit materials in order to establish community acceptance or tolerance of such materials. Rather, the issue concerns the population's perception of what is generally acceptable in the community considering the intended and probable recipients of the material. *Pinkus v. United States* (1978), 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293.

In the two Ohio cases cited by this court wherein Dr. Scott was permitted to testify with regards to the results of his random survey, the state assigned as error the admission of that evidence. Both courts of appeal found that the evidence was admissible and that the state's objections concerned the weight of the evidence rather than its admissibility. This court agrees. In the transcript, the trial court indicated that it was not informed of the methodology used by Dr. Scott in preparing, conducting and analyzing the survey and data. That was one reason why the trial court did not permit the telephone survey to be admitted or testified to by Dr. Scott. This court finds that, if the appellant, on remand, can demonstrate to the trial court that the survey conducted by Dr. Scott was conducted in accordance with generally accepted methodology, then that survey is admissible. Any objection, other than to the lack of foundational requisites would affect the weight accorded to the survey, and not its admissibility.

In *Saliba, supra,* the Indiana court carefully reviewed the character of survey evidence, its relevance, it trustworthiness, and its admissibility in other situations. The court established six foundational criteria which are generally accepted as scientifically necessary to ensure a poll's reliability and, consequently, its admissibility. The court stated as follows:

" \* \* \* The proponent of a poll has the burden of establishing: 1) the poll was conducted by an expert in the field of surveying; 2) the relevant universe was examined; 3) a representative sample was drawn from the relevant universe; 4) the mode of questioning was 'correct' (mail, telephone, personal interview, etc.); 5) the sample, questionnaire, and the interviews were designed in accordance with generally accepted standards; 6) the data gathered was accurately reported; and 7) the data was analyzed in a statistically correct manner. J. Moore, *supra* at 138; *accord Baumholser v. Amax Coal*

*Co.,* 630 F.2d 550, 552 (7th Cir.1980). (Footnote omitted.) The adherence to this generally accepted methodology renders the poll's results admissible in the form of expert opinion." *Id.* at 1187–1188.

In the present case, this court is not aware of the circumstances under which the survey of Dr. Scott was conducted. On remand, the trial court must make a determination as to whether or not the survey was properly conducted and whether or not it is relevant to a determination of whether the film "Pleasure Games" is obscene. If the trial court finds that the survey was properly conducted and relevant, then that survey may be admissible and Dr. Scott may be permitted to testify concerning the results. While opinion poll evidence may be relevant and probative, the trial court nevertheless has wide discretion in determining admissibility. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343.

Accordingly, appellant's second and fourth assignments of error are well taken and are sustained as indicated in this opinion.

▆▆▆▆ In the third assignment of error, appellant argues that the trial court erred by refusing to admit or to take any testimony regarding alleged "comparable materials." The trial court concluded that comparable materials are not relevant, they confuse the jury and they have no probative value. (Citing *Hamling v. United States* [1974], 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590.)

A recurring issue in obscenity litigation is the attempt to use evidence of alleged "comparable materials" or other sexually explicit material available in the community to demonstrate community acceptance of the same. Unless specific criteria are met, such evidence is generally inadmissible. In *Hamling,* the United States Supreme Court found that such alleged "comparable materials" have been found to create more confusion than enlightenment in the minds of the ultimate fact finder, the jury. *Hamling, supra,* at 127, 94 S.Ct. at 2912, 41 L.Ed.2d at 626. Furthermore, the court found that the admission of numerous allegedly comparable materials may render a trial unmanageable and lengthy.

In the present case, appellant attempted to introduce evidence of comparable materials through the testimony of Dr. Jane Gray. Dr. Gray was permitted to testify concerning the fact that out of fifty-nine video stores which she visited she found the movie "Pleasure Games" at six of those locations. However, she was not permitted to testify concerning the fact that she had reviewed the film "Pleasure Games" and that she had gone into various stores seeking to determine whether or not they carried similar sexually explicit material. The trial court refused to permit this testimony.

The trial court's decision to exclude testimony concerning the existence of comparable material rests within the sound discretion of the trial court. The admission of or exclusion of relevant evidence rests within the sound discretion of the trial court. *Sage, supra,* paragraph two of the syllabus. A reviewing court should not reverse the judgment of a trial court absent a clear showing that the trial court abused its discretion and that the defendant was materially prejudiced. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130.

An abuse of discretion connotes more than just an error of law. It exists where the court's attitude, evidenced by its decision, was unreasonable, arbitrary or unconscionable. *Jenkins, supra.* A trial court has broad discretion in ruling on evidentiary issues. *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768.

Upon review of the record, including the trial court's pretrial decision on this matter, this court finds the trial court did not abuse its discretion in refusing to allow appellant to present evidence of and testimony relating to alleged "comparable materials." Accordingly, appellant's third assignment of error is not well taken and is overruled.

In his fifth assignment of error, appellant argues that the trial court erred in overruling his motion for pretrial determination of the definitions of "prurient appeal" and "patent offensiveness." The trial court overruled appellant's motion and indicated that appellant could submit proposed jury instructions at the appropriate time.

Appellant directs this court's attention to the decision of the Supreme Court of Colorado in *People v. Tabron* (1976), 190 Colo. 149, 544 P.2d 372, wherein that court held that it was a denial of due process not to determine the community standards to be used when so requested prior to trial. The court found that fundamental fairness required that the defendant be advised by the court as to the community standard which provides the criteria for determining the issue of guilt or innocence. Furthermore, the court found that it would be fundamentally unfair for a person to undergo a trial that would entail criminal penalties for the violation of a state obscenity statute without knowing what the standard is that will determine his guilt or innocence. *Id.* 190 Colo. at 162, 544 P.2d at 381.

Appellant also directs this court's attention to three decisions which have come out of the municipal court of the city of Dayton, Ohio. Appellant contends that in those decisions, the Dayton Municipal Court provided the defendants with definitions of "prurient appeal" and "patent offensiveness." Upon review of those decisions, this court finds that the court's definitions did

not expand upon the definitions already provided by the United States Supreme Court. Appellant did not request that the jury be instructed as to those definitions prior to trial; appellant only argues that he should have been provided with these definitions prior to trial. There simply is no requirement for a trial court to provide these definitions for a defendant. Consequently, appellant would have to show that the trial court abused its discretion in refusing his motion. Appellant has not done so.

Accordingly, appellant's fifth assignment of error is not well taken and is also overruled.

Appellant's seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth assignments of error all concern the trial court's instructions to the jury.

In *State v. Scott* (1986), 26 Ohio St.3d 92, 26 OBR 79, 497 N.E.2d 55, the Supreme Court stated as follows:

"This court has held that it is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge. *State v. Nelson,* (1973), 36 Ohio St.2d 79 [65 O.O.2d 222, 303 N.E.2d 865]. However, the court need not administer the requested order in the exact language presented. *Id.* at 84 [65 O.O.2d at 225, 303 N.E.2d at 869]. Further, the court may refuse to give an instruction as to a matter which is not applicable to the facts governing the case. *Romeo v. State* (1931), 39 Ohio App. 309 [177 N.E. 483]." *Id.,* 26 Ohio St.3d at 101, 26 OBR at 87, 497 N.E.2d at 63.

Furthermore, it must be remembered that instructions to the jury are to be considered as a whole and not merely by examining isolated portions thereof. *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus.

In the present case, this court finds that the instructions given to the jury by the trial court, when considered as a whole, constitute a correct, complete and accurate statement of the law as warranted by the facts. The record does not support a finding that the trial court abused its discretion in instructing the jury. In fact, review of the proposed instructions requested by appellant indicates that those instructions were in part redundant and in part incorrect statements of the law in Ohio. For example, the trial court instructed the jury as follows with regards to the definition of the "average person":

"In addition, in the definition that I have given you, I have referred to the 'average person,' and I will define that as follows: In deciding the material as a whole, whether the material as a whole appeals to the prurient interest and

whether the sexual conduct is portrayed in a patently offensive way, the jury must avoid subjective, personal, and private views in determining community standards and instead evaluate what judgment would be made by an average adult person, applying the collective view of the adult community as a whole.

"We have also made reference to 'contemporary community standards.' The jury is to decide what judgment would be made by this average person in his application of contemporary community standards. And community standards simply provide the measure against which the jury decides the question of appeal to the prurient interest and patent offensiveness.

"In deciding what conclusion the average person, applying contemporary community standards, would reach in these respects, the jury is entitled to draw on its own knowledge of the views and the sense of the average person in the community in which you came."

Appellant's proposed jury instruction number thirty would have included the addition of the following language:

" * * * By evaluating the film by the 'average person', you are to determine the collective view of the *adult* community by mixing together the entire adult community, including persons of every kind; the educated and the uneducated, the religious and irreligious, men and women, the sensitive and the insensitive, the most prudish and the most tolerant; in other words, you must include everyone in the adult community, but once you, the jury, have determined the average adult, the material here must be measured by such average adult, and not by the young, or the immature, or by the highly susceptible."

 The trial court is not required to include proposed jury instructions which are redundant and which would serve simply to confuse the jury as to the issues in the case. The trial court's definition of the average person was simple and correct. The proposed instruction given by appellant is a lengthy definition which reiterates the obvious and is a biased definition as opposed to the neutral charge given by the court. The trial court did not err by not reading this proposed instruction.

Likewise, the trial court defined the term "prurient interest" for the jury as follows:

"We have additionally used the term 'prurient interest,' and I will define that for you. Prurient interest is an appeal to an unhealthy, abnormal, unwholesome, degrading, shameful, or morbid interest in sex."

 In proposed jury instruction number thirty-three, appellant would have had the trial court include the following language in its definition of "prurient interest":

"Material does not appeal to the prurient interest just because it deals with sex, or shows nude bodies. In addition, the mere fact that material depicting sexual activities has some appeal to prurient interest does not meet this test. The appeal to the prurient interest of the average adult must be the predominant or principal appeal of the material. In other words, the principal appeal of the videotape must be to a shameful, morbid, unhealthy interest in sex, nudity, or excretion, as distinguished from appealing to and provoking only normal, healthy sexual desires common to most adults in our society. Therefore, to find that this material 'appeals to a prurient interest,' you must find that the impact and effect of viewing this material by the average person should be to provoke or arouse a shameful, morbid, unhealthy sexual response."

As with the definition for "average person," the trial court's definition of "prurient interest" was a correct, accurate and simple definition of the law as it stands here in the state of Ohio. Appellant's proposed instruction describes in lengthy paragraphs what the trial court summed up in short, simple sentences. Again, the trial court did not err in refusing to include this proposed instruction.

Without reiterating each and every argument raised by appellant in the assignments of error pertaining to the jury instructions, each proposed instruction presented by appellant to the trial court was properly excluded by the trial court. The trial court read the law to the jury in a correct, simple and precise manner. Appellant's proposed instructions and the arguments he raises in this appeal pertain to isolated sentences which appellant has taken out of context. The proposed instructions would have served to confuse the jury and would have included incorrect statements of the law. As such, those proposed instructions were improper and the trial court properly refused to give those instructions to the jury.

Based on the foregoing, appellant's seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth assignments of error are not well taken and are overruled.

In the fifteenth assignment of error, appellant argues that the trial court misled the jury as to the proper definition of "contemporary community standards." Appellant contends that various evidentiary rulings misled the jury concerning the application of the "contemporary community standards." However, the record does not support appellant's contentions.

During deliberations, the jury requested the trial court to reread the *Miller* test, the Ohio obscenity statute and the definitions of prurient appeal, patent offensiveness and sexual conduct. The jury did not request any redefinition concerning the term "contemporary community standards." Following the

guilty verdict, appellant requested that the jury be polled, and all eight jurors replied in the affirmative that that was their verdict.

■■■ Appellant has attached to his brief the affidavit of J. Michael McGinley who represented the appellant in the trial court. According to this affidavit, McGinley spoke to several of the jurors following the verdict rendered in this case. Apparently those jurors told McGinley that they understood that the jury instructions and directions from the trial court to mean that they were not permitted to take into account, in assessing contemporary community standards, what was actually happening in Franklin County as to any other sexually explicit video tapes, but only the contemporary community standards as to the video tape "Pleasure Games." Appellee has filed a motion to strike the affidavit of McGinley.

In *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, the Ohio Supreme Court stated as follows at paragraph two of the syllabus:

"Where an attorney is told by a juror about another juror's possible misconduct, the attorney's testimony is incompetent and may not be received for the purpose of impeaching the verdict or for laying a foundation of evidence *aliunde*."

Therefore, appellee's motion to strike the affidavit of McGinley will be granted.

The record simply does not support appellant's contention that the jury misunderstood the trial court's instructions. The trial court properly instructed the jury regarding the *Miller* test for obscenity, including the "contemporary community standards." Furthermore, the trial court instructed the jury regarding the evidentiary rulings and actions of the trial court as follows:

"During the course of the trial, there have been a number of occasions when there were objections that I might have sustained. Any answers or statements that were stricken by the Court to which you were instructed to disregard are not evidence and must not be—must be treated as though you never heard them.

"You must not speculate as to why the Court sustained the objection to any question or what the answer to such question might have been. You must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered.

"* * * *

"If, during the trial, the Court has done anything that you consider to be an indication of my view on the facts of this case, you are instructed specifically to disregard that."

▆▆ It is presumed that a jury will obey the trial court's instructions. *State v. Dunkins* (1983), 10 Ohio App.3d 72, 10 OBR 82, 460 N.E.2d 688. The record simply does not contain any indication that the jury was misled concerning the contemporary community standards instructions.

Accordingly, appellant's fifteenth assignment of error is not well taken and is overruled.

▆▆▆ An appellate court must conduct an independent review of the record in a First Amendment case " * * * to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited. * * * " *Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 505, 104 S.Ct. 1949, 1962, 80 L.Ed.2d 502, 519. In an obscenity case, what appeals to the "prurient interest" and what is considered "patently offensive" are essentially questions of fact. *Miller, supra,* 413 U.S. at 30, 93 S.Ct. at 2618, 37 L.Ed.2d at 434.

▆▆ Ordinarily, this court would, at this time, conduct an independent review of the record to ensure that the movie "Pleasure Games" was properly found to be obscene and, therefore, not entitled to protection under the First Amendment to the United States Constitution. However, inasmuch as this court has determined that the trial court must determine whether or not the survey conducted by Dr. Scott was properly conducted, and therefore, admissible as evidence of the contemporary community standards of the average person in Franklin County, review at this time is premature.

Based on the foregoing, appellant's first, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth assignments of error are not well taken and are overruled. Appellant's second and fourth assignments of error are sustained. This matter is remanded to the Franklin County Municipal Court with the following instructions: (1) the trial court must determine whether or not the survey conducted by Dr. Joseph Scott was conducted in accordance with proper scientific methodology; (2) if the survey was conducted properly, the survey and testimony relative thereto may be admissible and appellant would be entitled to a new trial; (3) if the trial court determines that the survey was not conducted properly, appellant can file an appeal with this court concerning the trial court's decision that the survey was not admissible and, at that time, this court will address that issue and will conduct an independent review of the question of whether or not the movie is obscene.

*Motion to strike granted;*
*judgment remanded*
*with instructions.*

Koehler, J., concurs.

McCormac, dissents.

Koehler, J., of the Twelfth Appellate District, sitting by assignment in the Tenth Appellate District.

McCormac, Judge, dissenting.

All assignments of error should be overruled and the judgment of the trial court should be affirmed.

The trial court did not abuse its discretion in excluding appellant's public opinion poll and expert testimony purporting to be evidence of contemporary community standards.

As the majority states, in an obscenity trial the trier of fact must determine, among other factors, whether the average person applying contemporary community standards would find that the work taken as a whole appeals to the prurient interest. *Miller v. California* (1973), 413 U.S. 15, at 24, 93 S.Ct. 2607, at 2615, 37 L.Ed.2d 419, at 431; *Roth v. United States* (1957), 354 U.S. 476, at 490, 77 S.Ct. 1304, at 1312, 1 L.Ed.2d 1498, at 1510. As stated in footnote 20 of *Roth,* material which appeals to a prurient interest is that having a tendency to excite lustful thoughts. Thus, the standard upon which this factor is to be judged is whether the average person considering contemporary community standards determines that the material taken as a whole has a tendency to excite lustful thoughts. Given the voir dire process and the selection of a jury of peers who represent the community and who have actually viewed the materials which were placed in evidence, it seems superfluous and misleading to admit expert testimony. As noted in *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, at 56, 93 S.Ct. 2628, at 2634, 37 L.Ed.2d 446, at 456, in fn. 6:

"This is not a subject that lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. Cf. 2 J. Wigmore, Evidence §§ 556, 559 (3d ed. 1940). No such assistance is needed by jurors in obscenity cases; indeed the 'expert witness' practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony. See *United States v. Groner,* 479 F.2d 577, 585–586 (CA5 1973); *id.,* at 587–588 (Ainsworth, J., concurring). 'Simply stated, hard core pornography ... can and does speak for itself.' * * * "

I agree with that statement and would find that the trial court did not abuse its discretion in rejecting the expert testimony relating to the surveys. It should be kept in mind that an abuse of discretion standard is employed concerning the admission of expert testimony in an obscenity case. *Urbana*

*ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, at 113, 539 N.E.2d 140, at 144. The record does not support a finding that the trial court abused its discretion.

A second reason for rejecting the evidence concerning the surveys as proof of contemporary community standards in regard to whether the material herein appealed to a person's lustful interests is that the standard was cleverly changed to benefit the defendant. Appellant's counsel stated in his proffer that the survey was calculated to determine whether the material went substantially beyond the "customary limits of candor, either tolerated or accepted within the community." As can be noted, the criterion has been changed to what people might tolerate rather than what is obscene as appealing to the prurient or lustful thoughts of the average viewer. The issue is not what people will tolerate but what is the community standard for a material taken as a whole as to its appeal to lustful thoughts. Probably many viewers would candidly admit that that is the very reason that they view the material. Does that make the material any less obscene? I think not.

Regardless of what Dr. Scott may state, there is a vast difference between viewing the material as opposed to being asked questions about it. While it might be argued that objection only goes to the weight of the evidence, it seems apparent to me that reliance is being made upon uninformed hearsay statements which once again leads one to the conclusion that the jury and court who actually view the evidence are the only ones in the position to make this important determination.

Finally, a *de novo* review of the material leads one to the inescapable conclusion that the material is designed only to appeal to prurient or lustful interests.

The judgment of the trial court should be affirmed.